[No. F050331. Fifth Dist. Nov. 13, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDY JESSE IBARRA, Defendant and Appellant.

1176

**COUNSEL**

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Leslie W. Westmoreland, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.**—After a jury found appellant Rudy Jesse Ibarra guilty of one count of felony stalking and of two counts of misdemeanor assault of his live-in girlfriend on November 6, 2005, he admitted a serious felony prior—willful and malicious discharge of a firearm from a motor vehicle at another person other than an occupant of a motor vehicle—that qualified as a strike prior, on which basis the court sentenced him to six years (double the three-year aggravated term) on the stalking and to time served on the two assaults. (Pen. Code, §§ 240, 646.9, subd. (a), 667, subds. (b)–(j), 1170.12, subds. (a)–(e), 1192.7, subd. (c)(36), 12034, subd. (c).)[1]

With reference to most of his 21 appellate issues, Ibarra argues that numerous Judicial Council of California Criminal Jury Instructions (2006) (CALCRIM) subjected him "to a criminal trial with a jury incorrectly charged as to the applicable law" and "so infused the trial with unfairness as to deny [him] equal protection under the law and his right to due process of law" as guaranteed by the federal and state Constitutions. As to some of those issues, he invokes his constitutional privilege against self-incrimination, right to trial

---

[1] All statutory references are to the Penal Code except where otherwise noted.

by jury, right to confront witnesses against him, right to compulsory process, and right to counsel, too. The Attorney General argues as to some, but not all, of Ibarra's instructional issues, that he forfeited his right to appellate review by failing to object, by inviting error, or by failing to request modification. Ibarra nonetheless claims a right to appellate review on the ground of ineffective assistance of counsel. In the interests of brevity and judicial efficiency, we will address Ibarra's instructional issues on the merits without individual references to the constitutional grounds of his arguments, to the Attorney General's forfeiture arguments, or to Ibarra's claims of ineffective assistance of counsel. We will affirm the judgment.

## DISCUSSION

### 1. *CALCRIM No. 100*

Ibarra argues that CALCRIM No. 100 is a prejudicial burden-shifting instruction. He challenges several facets of the instruction.

First, citing *Taylor v. Kentucky* (1978) 436 U.S. 478 [56 L.Ed.2d 468, 98 S.Ct. 1930] for the proposition that the "presumption of innocence alone is sufficient to acquit the defendant," Ibarra argues that a clause in the instruction—"the defendant does not have to prove that he is not guilty"—misstates the law. He quotes the clause out of context. The entire sentence from which he extracts the clause—"*Because he is presumed innocent*, the defendant does not have to prove that he is not guilty"—correctly states the law. (Italics added.)

Second, he argues that the instruction "fails to assure the jurors will understand that except for affirmative defenses and preliminary facts the defendant has no burden to present evidence or prove anything at trial" and that "no other CALCRIM instruction specifically informs the jurors the defendant has no burden of proving specific issues at trial." Rejecting an analogous challenge, our Supreme Court held that the standard reasonable doubt instruction, other aspects of the charge to the jury, and the prosecutor's argument to the jury about her own "burden of proof on each and every count" emphasized the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt so it was "not reasonably likely the jury understood the challenged instructions to mean defendant had the burden of establishing his innocence." (*People v. Frye* (1998) 18 Cal.4th 894, 957–961 [77 Cal.Rptr.2d 25, 959 P.2d 183] (*Frye*).)

Here, the court instructed the jury on the prosecution's burden of proof beyond a reasonable doubt with not only CALCRIM No. 220 (Reasonable Doubt) but also in other contexts with CALCRIM No. 224 (Circumstantial

Evidence: Sufficiency of Evidence), CALCRIM No. 355 (Defendant's Right Not to Testify), CALCRIM No. 359 (Corpus Delicti: Independent Evidence of a Charged Crime), CALCRIM No. 852 (Evidence of Uncharged Domestic Violence), CALCRIM No. 3145 (Personally Used Deadly Weapon), and CALCRIM No. 3517 (Deliberations and Completion of Verdict Forms: For Use When Lesser Included Offenses and Greater Crimes Are Not Separately Charged (Non-Homicide)). Just before argument, the court stated to the jury, "At this point, then, the People have the burden of proof. They have the first and last argument." In his opening and closing arguments to the jury, the prosecutor emphasized the jury's duty to consider the evidence in light of his own burden of proof beyond a reasonable doubt. Here, on a record akin to that in *Frye*, it was not reasonably likely that the jury understood the challenged instructions to mean Ibarra had the burden of establishing his innocence.

Third, Ibarra argues that CALCRIM No. 100 "erroneously implies that pretrial and all midtrial instructions do not apply to the case." The sole basis of his argument, for which he cites no authority, is a single sentence in CALCRIM No. 100: "After you have heard all the evidence and before the attorneys give their final arguments, I will instruct you on the law that applies to the case." In toto, the instruction reads as follows:

"Before we begin, I am going to describe for you how the trial will be conducted, and explain what you and the lawyers and I will be doing. When I refer to 'the People,' I mean the attorney from the district attorney's office who is trying this case on behalf of the People of the State of California. When I refer to defense counsel, I mean the attorney who is representing the defendant, Rudy Ibarra.

"The first step in the trial is the People's opening statement. The defense may choose to give an opening statement then or at the beginning of the defense case. The purpose of an opening statement is to give you an overview of what the attorneys expect the evidence will show.

"Next, the People will offer their evidence. Evidence usually includes witness testimony and exhibits. After the People present their evidence, the defense may also present evidence but is not required to do so. Because he is presumed innocent, the defendant does not have to prove that he is not guilty.

"After you have heard all the evidence and before the attorneys give their final arguments, I will instruct you on the law that applies to the case. After their arguments, I will have some final instructions for you. You will receive a copy of all of the Court's instructions when the case is submitted to you for decision.

"After you have heard all of the arguments and instructions, you will go to the jury room to deliberate." (CALCRIM No. 100.)

The Bench Notes to CALCRIM No. 100 observe that although there "is no sua sponte duty to give an instruction outlining how the trial will proceed" the instruction is available "for the convenience of the trial judge who may wish to explain the trial process to jurors." The authorizing rule of court illuminates the purpose of the instruction: "Immediately after the jury is sworn, the trial judge may, in his or her discretion, preinstruct the jury concerning the elements of the charges or claims, its duties, its conduct, the order of proceedings, the procedure for submitting written questions for witnesses as set forth in rule 2.1033 if questions are allowed, and the legal principles that will govern the proceeding." (Cal. Rules of Court, rule 2.1035.)

Ibarra's challenge to the one sentence in the instruction is entirely silent about another sentence in the instruction that obligates the jury to hear "*all* of the arguments and instructions" before deliberating. (CALCRIM No. 100, italics added.) Congruently, he cites nothing in the record showing, let alone intimating, that the jury ignored any of the court's instructions, whether given before, during, or after the evidentiary phase of trial. The standard of review applicable to an instruction challenged on appeal as ambiguous is whether there is a reasonable likelihood that the jury applied the instruction in a way that denied the defendant a fair trial. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72–73 [116 L.Ed.2d 385, 112 S.Ct. 475] (*Estelle*); *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705] (*Clair*).) Ibarra fails to persuade us that the jury applied the instruction in that way. So we apply the presumption that jurors are able to correlate, follow, and understand the court's instructions (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [111 Cal.Rptr.2d 129, 29 P.3d 209] (*Sanchez*)) and reject his argument.

Fourth, Ibarra challenges another single sentence in CALCRIM No. 100—"Evidence usually includes witness testimony and exhibits"—by arguing, in toto, as follows: "This is incomplete and implies nothing else constitutes evidence. Evidence may also include matters such as out-of-court statements and stipulations. (See, CALCRIM [No.] 222[2].)" "Other than a brief mention of the argument, however, he does not expand on the issue with either argument or citation to relevant authority. We thus decline to address the issue." (*People v. Hardy* (1992) 2 Cal.4th 86, 150 [5 Cal.Rptr.2d 796, 825 P.2d 781] (*Hardy*).)

Fifth, Ibarra argues that the definition in CALCRIM No. 100 of "the People" as "the attorney from the district attorney's office who is trying this

---

[2] The court here instructed, inter alia, with CALCRIM No. 222 (Evidence).

case on behalf of the People of the State of California" improperly favors the prosecution. With commendable candor, he acknowledges that *People v. Black* (2003) 114 Cal.App.4th 830 [7 Cal.Rptr.3d 902] rejected that challenge. So do we.

Finally, Ibarra argues that the word "defendant" not only "dehumanizes and stigmatizes" him but also undermines the presumption of innocence by implying an obligation to come forth "with evidence or proof to justify an acquittal." He cites only one authority for his argument, *Wardius v. Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], and makes no attempt to articulate the relevance, if any, of that case to his argument. None is apparent to us. On that state of the briefing, we decline to address the issue. (*Hardy, supra*, 2 Cal.4th at p. 150.)

### 2. *CALCRIM No. 101*

Ibarra argues that CALCRIM No. 101 "erroneously instructs the jury regarding outside influences on the jury and jury opinions toward the verdict." He focuses his challenge on two sentences in the instruction.

As to one sentence, "You must not allow anything that happens *outside* of the courtroom to affect your decision," Ibarra argues that the instruction fails to caution the jurors about improper nonevidentiary influences that could occur *inside* the courtroom. (CALCRIM No. 101,[3] italics added.) As to the other sentence, "*Do not make up your mind* about the verdict or any issue until after you have discussed the case with the other jurors during deliberations," he argues that the instruction improperly implies jurors may *begin to form opinions* before deliberations commence. (CALCRIM No. 101, italics added.)

█ Our duty is to look at the instructions as a whole, not in isolation. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016 [68 Cal.Rptr.2d 648, 945 P.2d 1197] (*Castillo*).) CALCRIM No. 101 cautions jurors, without regard to location, to discuss the case together only after the attorneys have presented all of the evidence and completed their arguments and only after the court has instructed the jury on the law. The instruction prohibits jurors, without regard to location, from speaking to any party, witness, or lawyer involved in the trial, from using a dictionary or other reference material, and from listening to anyone who tries to talk to them about the case during the trial. The instruction requires jurors, without regard to location, to keep an open mind throughout the trial and not to let bias, sympathy, prejudice, or public opinion

---

[3] After Ibarra's trial, the Judicial Council amended that sentence by adding "[unless I tell you otherwise]" at the end. (CALCRIM No. 101 (June 2007 rev.).)

influence their decision. Elsewhere in the charge to the jury, CALCRIM No. 3550, which expressly applies *after* deliberations commence, instructs, "Keep an open mind and openly exchange your thoughts and ideas about this case."

Ibarra fails to persuade us that there is a reasonable likelihood that the jury applied the instruction in a way that denied him a fair trial (*Estelle, supra,* 502 U.S. at pp. 72–73; *Clair, supra,* 2 Cal.4th at p. 663), so we apply the presumption that jurors are able to correlate, follow, and understand the court's instructions (*Sanchez, supra,* 26 Cal.4th at p. 852) and reject his argument.

### 3. *CALCRIM Nos. 102 and 104*

Ibarra argues that CALCRIM Nos. 102 and 104 incorrectly instruct on a juror's notes and on the court reporter's notes. He focuses his challenge on one sentence in each instruction—"You may use your notes only to remind yourself of what happened during the trial, but remember, your notes may be inaccurate or incomplete," in CALCRIM No. 102, and "You must accept [the court reporter's] notes as accurate," in CALCRIM No. 104.[4] He argues that those sentences imply that a juror's notes are "per se less accurate" than a court reporter's notes.

Although Ibarra cites authority holding, inter alia, that the reviewing courts "are not bound by the punctuation supplied by the court reporter" if the language in the court reporter's notes differs "slightly from the standard jury instruction" (*People v. Huggins* (2006) 38 Cal.4th 175, 190–191 [41 Cal.Rptr.3d 593, 131 P.3d 995]), he cites no authority at all supporting his argument that "jurors should be free to rely on their own recollection of the testimony even if it conflicts with the reporter's notes." To the contrary, jurors free to do so could all too easily exacerbate the difficulties that arise when "hostile jurors" express "a fixed view of the case early in deliberations" (*People v. Cleveland* (2001) 25 Cal.4th 466, 480 [106 Cal.Rptr.2d 313, 21 P.3d 1225]) and when "strongly opinionated jurors" cause "other jurors to conclude they could not deliberate further with those jurors" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1350–1351 [65 Cal.Rptr.2d 145, 939 P.2d 259]). His argument without citation to relevant authority is not persuasive. (See *People v. Williams* (1997) 16 Cal.4th 153, 266 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

---

[4] After Ibarra's trial, the Judicial Council broke into two sentences the sentence he challenges in CALCRIM No. 102: "The notes are for your own individual use to help you remember what happened during the trial. Please keep in mind that your notes may be inaccurate or incomplete." (CALCRIM No. 102 (June 2007 rev.).)

### 4. *CALCRIM No. 104*

Ibarra argues that CALCRIM No. 104 incorrectly defines the jury's duty at trial. His challenge arises from words in two sentences of the instruction, "You must decide *what the facts are* in this case," and, "Do not assume that something is *true* just because one of the attorneys asks a question that suggests it is true."[5] (CALCRIM No. 104, italics added.) He argues that the instruction improperly shifts the burden of proof by focusing the jury's inquiry on deciding which witnesses to believe and on what the facts are.

Neither of Ibarra's authorities supports his argument. In *Mitchell v. United States* (1999) 526 U.S. 314 [143 L.Ed.2d 424, 119 S.Ct. 1307], the defendant pled guilty, the trial court drew an adverse inference from his silence at sentencing, and the high court reversed since "the question in a criminal case is not whether the defendant committed the acts of which he is accused" but "whether the Government has carried its burden to prove its allegations." (*Id.* at p. 330.) In *Cool v. United States* (1972) 409 U.S. 100 [34 L.Ed.2d 335, 93 S.Ct. 354] (*Cool*), the trial court required "as a predicate to the consideration of certain evidence" that the jury find the evidence "true beyond a reasonable doubt," and the high court reversed since the requirement the instruction imposed was "plainly inconsistent with the constitutionally rooted presumption of innocence." (*Id.* at p. 104.) None of the words Ibarra challenges in CALCRIM No. 104 succumbs even remotely to the blatant constitutional flaws of either the sentencing in *Mitchell* or the instruction in *Cool*.

Finally, Ibarra argues that the instructions should incorporate the well-settled principle that "witness credibility is not necessarily an all-or-nothing preposition [*sic*] and some portions of the testimony of a witness may be given more or less weight than others." Another instruction in the charge to the jury did just that. CALCRIM No. 226 authorized the jury to "believe all, part, or none of any witness's testimony," to "decide how much of it you believe," and, if the jury thought "the witness lied about some things, but told the truth about others," to "simply accept the part that you think is true and ignore the rest." Nothing in the record rebuts the presumption that jurors are able to correlate, follow, and understand the court's instructions. (*Sanchez, supra*, 26 Cal.4th at p. 852.) We reject his argument.

---

[5] Additionally, Ibarra challenges the instruction's definition of the jury's duty as deciding "where 'the truth' lies," but neither the quoted clause nor even the word "truth" appears in the instruction. (CALCRIM No. 104.) Since his carelessness amounts to a violation of rules of court, we will disregard those references but will otherwise address the merits of his argument. (*Baron v. Fire Ins. Exchange* (2007) 154 Cal.App.4th 1184, 1186, fn. 1 [65 Cal.Rptr.3d 502]; *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 827, fn. 1 [19 Cal.Rptr.3d 84]; Cal. Rules of Court, former rule 14(a)(1)(C), (a)(2)(C); cf. Cal. Rules of Court, rule 8.204(a)(1)(C), (a)(2)(C), eff. Jan. 1, 2007.)

### 5. *CALCRIM No. 200*

Ibarra argues that CALCRIM No. 200 improperly coerces, and improperly invades the province of, the jury. He focuses his challenge on two sentences in the instruction.

As to one of those sentences, "I will now instruct you on the law that applies to this case," he argues that jurors, not judges, determine whether or not an instruction applies to the case. His argument depends on a strained interpretation of a single sentence out of context. Elsewhere, CALCRIM No. 200 instructed the jury, "You must decide what the facts are," and, "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

As to the other sentence, "You must reach your verdict without any consideration of punishment," Ibarra argues that, contrary to the instruction, jurors need not reach a verdict. His argument ignores the second half of that sentence. As a whole, the sentence instructed not that the jury *must* reach a *verdict* but that in reaching a verdict the jury *must not* consider *punishment*. Elsewhere, the charge to the jury instructed, "You should try to agree on a verdict if you can," and, "If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only . . . ." (CALCRIM No. 3550.)

Our duty is to look at the instructions as a whole, not in isolation. (*Castillo, supra*, 16 Cal.4th at p. 1016.) So read, CALCRIM No. 200 correctly instructed the jury. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 929 [61 Cal.Rptr.3d 903] (*Anderson*).)

### 6. *CALCRIM No. 220*

Ibarra argues that CALCRIM No. 220 improperly implies that bias against the defendant is permissible for reasons other than arrest, charge, and trial. He focuses his challenge on the sentence in the instruction that instructs the jury, "You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial." By telling the jury not to "be biased against the defendant based solely on three events," he argues, the instruction "leaves open the permissibility for the jury to be biased for any other reason."

Elsewhere, however, the charge to the jury instructed, without restriction, "Do not let bias, sympathy, prejudice, or public opinion influence your decision." (CALCRIM No. 200.) Our duty is to look at the instructions as a whole, not in isolation. (*Castillo, supra*, 16 Cal.4th at p. 1016.) So read, CALCRIM No. 220 correctly instructed the jury. (*Anderson, supra*, 152 Cal.App.4th at p. 929.)

### 7. *CALCRIM Nos. 223 and 224*

Ibarra argues that CALCRIM Nos. 223 and 224 are contradictory, confusing, and misleading. He characterizes CALCRIM No. 223 as instructing the jury that "both kinds of evidence are acceptable and neither direct evidence nor circumstantial evidence is entitled to any greater weight than the other." That language, he argues, "could erroneously leave the jurors with the impression that they are *not* free to give specific circumstantial evidence greater weight than other specific direct evidence or vice versa."

The portion of CALCRIM No. 223 Ibarra challenges reads verbatim, "Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved *based on all the evidence*." (Italics added.) Reasonably read, the instruction does not suffer from the malady he imputes to it. (*Anderson, supra*, 152 Cal.App.4th at pp. 929–930.)

Ibarra challenges CALCRIM No. 224 on three grounds. First, he argues that the instruction addresses only circumstantial evidence and criticizes the "intentional omission" of direct evidence from its scope. The instruction reads:

"Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." (CALCRIM No. 224.)

■ Implicit in Ibarra's argument is the assumption that circumstantial evidence and direct evidence are similarly situated, but that is not so. Circumstantial evidence involves a two-step process—first, the parties present evidence and, second, the jury decides which reasonable inference or inferences, if any, to draw from the evidence—but direct evidence stands on its own. So as to direct evidence no need ever arises to decide if an opposing inference suggests innocence. (*Anderson, supra*, 152 Cal.App.4th at p. 931.)

■ Second, Ibarra argues that CALCRIM No. 224 improperly uses the language of "innocence" and "guilt" in violation of the fundamental principle of criminal law that the prosecution has the burden of proof of guilt beyond a reasonable doubt. He relies on a case that characterizes analogous language in a standard CALJIC circumstantial evidence instruction as a "minor anomaly," that compliments a defense request to substitute "lack of finding of guilt" for "innocence" in the instruction, and that finds no prejudice since other standard instructions clarified the law adequately. (*People v. Han* (2000) 78 Cal.App.4th 797, 809 [93 Cal.Rptr.2d 139]; CALJIC No. 2.01.) *Han's* rationale is not persuasive. "For a defendant to be found not guilty, it is not necessary that the evidence as a whole prove his innocence, only that the evidence as a whole fails to prove his guilt beyond a reasonable doubt. In other words, a not guilty verdict is based on the insufficiency of the evidence of guilt." (*Anderson, supra*, 152 Cal.App.4th at p. 932.) CALCRIM No. 224 correctly states the law.

Third, Ibarra argues that CALCRIM No. 224 improperly defines the burden of proof in terms of being "convinced" that the prosecution "proved each fact essential to that conclusion beyond a reasonable doubt." On that premise, he argues that a juror can be "convinced" in his or her own mind that the defendant is guilty beyond a reasonable doubt "even if the evidence has fallen short of so proving." The role of CALCRIM No. 224, however, is not to define reasonable doubt. That is the role of CALCRIM No. 220. The role of CALCRIM No. 224 is to caution the jury before relying on circumstantial evidence to find the defendant guilty beyond a reasonable doubt. The one does not undermine the other. (*Anderson, supra*, 152 Cal.App.4th at pp. 933–934.)

### 8. *CALCRIM No. 226*

Ibarra argues that CALCRIM No. 226 misstates the law on honest forgetfulness and mistaken recollection. He focuses his challenge on the sentence in CALCRIM No. 226 that instructs the jury, "People sometimes honestly forget things or make mistakes about what they remember," and contrasts that sentence with an analogous one, "Innocent misrecollection is not uncommon," in CALJIC No. 2.21.1.

"In purporting to 'translate' the CALJIC instruction into so-called 'plain English,' " Ibarra argues, the drafters of the CALCRIM instructions "lost the essential meaning embodied in the legal terminology which had been utilized in the CALJIC instructions for decades." He contrasts the word "sometimes" in CALCRIM No. 226 with the term "not uncommon" in CALJIC No. 2.21.1, notes that "CALCRIM's sister publication, CACI," uses the word "often" in both Judicial Council of California Civil Jury Instructions (2006) CACI Nos. 107 and 5003 ("People often forget things or make mistakes in what they remember."), and argues that "CACI corroborates the fact CALCRIM's use of the term 'sometimes' does not accurately convey the language it replaced."[6]

■ Ibarra's argument intimates that CALJIC instructions serve as the benchmark by which to adjudicate the correctness of CALCRIM instructions. Not so. "The California Judicial Council withdrew its endorsement of the long-used CALJIC instructions and adopted the new CALCRIM instructions, effective January 1, 2006." (*People v. Thomas* (2007) 150 Cal.App.4th 461, 465 [58 Cal.Rptr.3d 581].) CALCRIM instructions are now "viewed as superior" to CALJIC instructions. (*Id.* at pp. 465–466.) Even if "not uncommon" and "sometimes" reflect differing levels of frequency, he cites no authority for the implicit premise of his argument that CALJIC No. 2.21.1 states the sole correct standard. Nor does he cite authority for the other implicit premise of his argument that the use of the word "often" in CACI Nos. 107 and 5003 somehow implies that the use of the word "sometimes" in CALCRIM No. 226 is incorrect. ■ His argument without citation to relevant authority is not persuasive. (See *People v. Williams, supra*, 16 Cal.4th at p. 266.)

■ Despite Ibarra's emphasis on the word "sometimes," the point of the instruction he challenges is not to quantify the frequency with which witnesses "honestly forget things or make mistakes about what they remember" but to invite the jury to "consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony" and to admonish the jury not to "automatically reject testimony just because of inconsistencies or conflicts." (CALCRIM No. 226.) Contrary to Ibarra's argument, CALCRIM No. 226 adequately makes that point. (*Anderson, supra*, 152 Cal.App.4th at p. 936.)

---

[6] Ibarra refers to CACI Nos. "105 and 5003" in his briefing, but we infer that he intends to refer to CACI Nos. 107 and 5003, since the sentence he quotes appears in CACI No. 107 but not in CACI No. 105.

### 9. *CALCRIM No. 252*

Ibarra argues that CALCRIM No. 252 misstates the law on the union of act and intent. He focuses his challenge to the instruction on linguistic differences between CALCRIM No. 252 and analogous CALJIC No. 3.31. "Unlike CALJIC No. 3.31, which advised the jury the union of act and intent applied to the union of act *or* conduct," he argues, "CALCRIM [No.] 252 fails to convey this concept." Since he does not quote any of the other instructional language he contrasts, we can only infer that he approves of CALJIC No. 3.31's requirement of "a union or joint operation of *act or conduct and a certain specific intent*" and disapproves of CALCRIM No. 252's requirement of "the union, or joint operation, of *act and wrongful intent.*" (Italics added.)

For three reasons, we disagree with Ibarra. First, his argument fails etymological analysis. "Conduct" means, inter alia, "[t]he way a person *acts*" (American Heritage Dict. (4th ed. 2000) p. 384, italics added) and "the *act*, manner, or process of carrying out (as a task)" (Webster's 3d New Internat. Dict. (1986) p. 473, italics added). So the absence from CALCRIM No. 252 of "conduct" as a synonym for "act" is inconsequential.

Second, the authorities on which Ibarra relies give him no succor. One uses "act" exclusively. (§ 20 ["In every crime or public offense there must exist a union, or joint operation, of *act* and intent, or criminal negligence."], italics added.) Another expresses no preference for one word over the other. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1224 [81 Cal.Rptr.2d 835, 970 P.2d 409].) None articulates a preference for "conduct" over "act."

Third, Ibarra's argument about CALCRIM No. 252, like his argument about CALCRIM No. 226 (see *ante*, pt. 8.), intimates that CALJIC instructions serve as the benchmark by which to adjudicate the correctness of CALCRIM instructions. Not so. (*People v. Thomas, supra*, 150 Cal.App.4th at pp. 465–466.)

### 10. *CALCRIM No. 300*

Ibarra argues that CALCRIM No. 300 improperly intimates that the defense has a duty to produce "some" evidence. In full, the instruction reads: "Neither side is required to call *all* witnesses who may have information about the case or to produce *all* physical evidence that might be relevant." (CALCRIM No. 300, italics added.) Acknowledging that the instruction "may be technically correct as far as it goes," he nonetheless argues that the jury might be left with the belief that the defense is required to produce *some* evidence.

*People v. Simms* (1970) 10 Cal.App.3d 299 [89 Cal.Rptr. 1] approved an analogous instruction on all available evidence as "a correct statement of law." (*Id.* at p. 313.) No significant differences exist between CALCRIM No. 300 and the instruction at issue in *Simms*. Additionally, the court here charged the jury not only with CALCRIM No. 200 on the prosecution's burden of proof beyond a reasonable doubt but also with CALCRIM No. 355 on the defendant's right not to testify: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

On the charge to the jury here, there is no reasonable likelihood that the jury misunderstood CALCRIM No. 300. (*Anderson, supra,* 152 Cal.App.4th at pp. 937–938; see *Estelle, supra,* 502 U.S. at pp. 72–73; *Clair, supra,* 2 Cal.4th at p. 663.) So we apply the usual presumption that jurors are able to correlate, follow, and understand the court's instructions and reject his argument. (*Sanchez, supra,* 26 Cal.4th at p. 852.)

11. *CALCRIM No. 302*

Ibarra argues that CALCRIM No. 302 undermines the presumption of innocence by improperly implying that all prosecution witnesses are truthful. He challenges several aspects of the instruction.

First, Ibarra challenges the admonition that the jury "not disregard the testimony of any witness *without a reason.*" (CALCRIM No. 302, italics added.) He argues that the admonition creates an invalid presumption that all witnesses are truthful so as to give prosecution witnesses "an improper presumption of correctness." Not so. *People v. Rincon-Pineda* (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247] held that an analogous instruction on weighing conflicting testimony, which admonished jurors not to disregard testimony on the basis of " 'caprice or prejudice,' " "will greatly aid triers of fact in arriving at proper verdicts" and "should be given henceforth in every criminal case in which no corroborating evidence is required." (*Id.* at pp. 884–885 & fn. 8; see CALJIC No. 2.22.) Since "caprice" is "a sudden impulsive and apparently unmotivated change of mind" (Webster's 3d New Internat. Dict., *supra,* at p. 333), to disregard testimony on the basis of "caprice" is to do so "without a reason." (*Ibid.*; CALCRIM No. 302.)

■ Second, Ibarra posits a conflict between the presumption of innocence and the admonition in CALCRIM No. 302 that the jury not "favor one side or the other." He argues that by focusing on the evidence the instruction "improperly frames the issues in terms of which side presented the more compelling evidence" since "two equally probable conflicting inferences do not overcome a burden of proof." Quite to the contrary, the instruction is impartial. The instruction mandates that the jury "*not disregard the testimony of any witness* without a reason or *because of* prejudice or *a desire to favor one side or the other*" but does *not* tell the jury to favor one side or the other. (CALCRIM No. 302, italics added.) The instruction mandates that the jury "decide what evidence, *if any*, to believe," regardless of which side introduces the evidence, but does *not* tell the jury to disregard the prosecution's burden of proof or to decide the case on the basis of disbelief of defense witnesses or presentation of more compelling evidence by the prosecution than by the defense. (CALCRIM No. 302, italics added.)

■ Third, Ibarra emphasizes that the "jury's view of the evidence may be different than the views of both the prosecution and the defense" and argues that CALCRIM No. 302 improperly mandates that the jury choose between prosecution witnesses and defense witnesses. He misreads the instruction, which cautions the jury, "What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify *about a certain point*." (CALCRIM No. 302, italics added.) "The instruction says nothing about choosing between prosecution and defense witnesses. It merely states the commonsense notion that the number of witnesses who have given testimony on a particular point is not the test for the truth of that point. It does no more. The jury remains free to choose the witness or witnesses it believes and what part of a witness's testimony it finds believable." (*Anderson, supra*, 152 Cal.App.4th at p. 940.)

### 12. *CALCRIM No. 355*

Ibarra argues that CALCRIM No. 355 misstates the law by implying that he has a duty to present a defense. He focuses his challenge on the first two sentences of the instruction: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and *argue* that the People have failed to prove the charges beyond a reasonable doubt." (CALCRIM No. 355, italics added.) On the basis of those two sentences, he "submits it is not up to him to *prove* he is not guilty." (Italics added.) Of course not.

First, Ibarra's argument makes a logically indefensible leap from argument to proof. CALCRIM No. 355 informs the jury that he may *argue* a failure of proof by the prosecution but imposes no requirement that he *prove* he is not

guilty. Second, by stating he *may* rely on the state of the evidence and argue a failure of proof by the prosecution, the instruction neither instructs nor implies that he *must* so argue. (*Anderson, supra*, 152 Cal.App.4th at p. 941.) Third, the last two sentences of the instruction put into perspective his argument about the first two sentences of the instruction: "Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." (CALCRIM No. 355.) There is no reasonable likelihood that the jury misunderstood CALCRIM No. 355. (*Anderson, supra*, 152 Cal.App.4th at pp. 937–938; see *Estelle, supra*, 502 U.S. at pp. 72–73; *Clair, supra*, 2 Cal.4th at p. 663.) The instruction imposes no duty to present a defense.

### 13. *CALCRIM No. 370*

Ibarra argues that CALCRIM No. 370 on motive misinstructs the jury in several ways. First, he argues that the instruction improperly implies jurors have a duty to reach a decision or to decide the case. The instruction reads: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty." (CALCRIM No. 370.) The charge to the jury elsewhere instructed, "You should *try* to agree on a verdict *if you can*," and, "If you are *able* to reach a unanimous decision *on only one or only some of the charges*, fill in those verdict forms only . . . ." (CALCRIM No. 3550, italics added.) Our duty is to look at the instructions as a whole, not in isolation. (*Castillo, supra*, 16 Cal.4th at p. 1016.) So read, CALCRIM No. 370 correctly instructed the jury. (*Anderson, supra*, 152 Cal.App.4th at p. 942.)

Second, Ibarra argues that by allowing the jury to "consider whether [he] 'had a motive' " CALCRIM No. 370 "improperly allows juror consideration of any free-floating or untethered motive which has nothing to do with the charged crimes." His argument ignores the first sentence of the instruction, which defines the motive at issue as "a motive to commit any of the crimes charged." (CALCRIM No. 370.) His argument is meritless. (*Anderson, supra*, 152 Cal.App.4th at p. 942.)

Third, Ibarra argues that CALCRIM No. 370 "employs erroneous burden shifting language by implying a defense obligation to 'show the defendant is not guilty.' " He presumably refers to the last two sentences of the instruc-

tion, which instruct, respectively, that having a motive may tend to show the defendant is guilty and not having a motive may tend to show the defendant is not guilty. CALCRIM No. 370 instructs on motive, however, not on burden of proof. The charge to the jury elsewhere instructed that the defendant is presumed innocent, that the defendant does not have to prove he or she is not guilty, and that the prosecution has the burden of proof beyond a reasonable doubt. (CALCRIM Nos. 100, 220.) Our duty is to look at the instructions as a whole, not in isolation. (*Castillo, supra,* 16 Cal.4th at p. 1016.) So read, CALCRIM No. 370 did not erroneously shift the burden of proof. (*Anderson, supra,* 152 Cal.App.4th at p. 942.)

Fourth, Ibarra argues that CALCRIM No. 370 "effectively informs the jury motive alone may be the basis for a finding of guilt." The instruction belies his argument by informing the jury that motive "may be a factor *tending* to show that the defendant is guilty." (CALCRIM No. 370, italics added.) "Saying motive is a factor that may *tend* to prove guilt is a far cry from saying it is a factor that alone may prove guilt. The fact that evidence tends to prove guilt merely establishes its relevance on the issue." (*Anderson, supra,* 152 Cal.App.4th at p. 943.) Jurors are presumed able to correlate, follow, and understand the court's instructions. (*Sanchez, supra,* 26 Cal.4th at p. 852.) On the charge to the jury here, there is no reasonable likelihood that the jury misunderstood CALCRIM No. 370. (See *Estelle, supra,* 502 U.S. at pp. 72–73; *Clair, supra,* 2 Cal.4th at p. 663.)

### 14. *CALCRIM No. 915*

Ibarra argues that CALCRIM No. 915 on simple assault erroneously fails not only to allow the jury to consider absence of injury but also to require the jury to find emotional distress. We will consider each of his challenges individually.

■ Ibarra's absence-of-injury argument arises from the last two sentences in the instruction: "No one needs to actually have been injured by the defendant's act. But *if someone was injured, you may consider that fact,* along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was." (CALCRIM No. 915, italics added.) He argues that absence of injury, as here, "could lead to the conclusion there was no intent to harm or instill fear." Assault is "a general intent crime," however, that "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur" but only "an

intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 788, 790 [111 Cal.Rptr.2d 114, 29 P.3d 197] (*Williams*).)

The mens rea of assault is "the general intent to wilfully [*sic*] commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*People v. Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) So the absence of injury is irrelevant. As CALCRIM No. 915 instructs, "Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, *hurt someone else*, or gain any advantage." (Some italics added.) The language Ibarra challenges simply allows the jury to consider the fact of an injury, *if* someone was injured, on the issue of general intent.

The case law and the jury instruction alike arise from the statutory definition of an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Just as the term "violent injury" in the statute " 'is not synonymous with "bodily harm" ' " (*People v. Rocha, supra*, 3 Cal.3d at p. 899, fn. 12), so CALCRIM No. 915 correctly omitted injury—absence and presence alike—in defining the elements of the crime:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant did an act that by its nature would directly and probably result in the application of force to a person;

"2. The defendant did that act willfully;

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and

"4. When the defendant acted, he had the present ability to apply force to a person." (CALCRIM No. 915.)

Ibarra grounds his emotional-distress argument in the premise that to find him guilty of assault the jury had to find "emotional distress to the victim."

The sole authority for his argument is a snippet of text from a century-old case in which the issue on appeal was whether, after a not guilty verdict of assault with intent to commit rape, a conviction of simple assault could stand without evidence of some violent injury to the prosecuting witness. (*People v. Bradbury* (1907) 151 Cal. 675, 676 [91 P. 497] (*Bradbury*).) *Bradbury* defined the statutory term "violent injury" to mean " 'any wrongful act committed by means of physical force against the person of another, *even although* [*sic*] *only the feelings of* [*the victim*] *are injured by the act*,' " and stated that the defendant was guilty of assault if his acts created a well-founded fear that rape was his intent. (*Id.* at pp. 676–677, italics added.)

In a lengthy analysis that sought to eliminate the " 'confusion on this issue which has developed throughout the courts of this state' " about the intent of the crime of assault, *People v. Colantuono* (1994) 7 Cal.4th 206 [26 Cal.Rptr.2d 908, 865 P.2d 704] quoted the snippet of text from *Bradbury* in the process of distinguishing between the general intent of assault, on the one hand, and the specific intent of assault "coupled with another substantive offense, e.g., assault with intent to commit rape," on the other. (*Colantuono, supra*, at pp. 210, 216, fn. 6.) "Recognizing that *Colantuono*'s language may have been confusing," however, our Supreme Court, again seeking to "clarify the mental state for assault," held not long ago that "a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." (*Williams, supra*, 26 Cal.4th at pp. 787–788.) *Williams* neither quotes the snippet of text from *Bradbury* nor cites the case. Emotional distress to the victim is not an element of the crime of assault. Ibarra's reliance on *Bradbury* and *Colantuono* is misplaced. The court correctly instructed the jury with CALCRIM No. 915.

### 15. *CALCRIM No. 1301*

Ibarra argues that CALCRIM No. 1301 incorrectly instructs the jury on stalking. He raises half a dozen challenges to the instruction.

First, Ibarra questions the sentence in CALCRIM No. 1301, "The People do not have to prove that a person who makes a threat intends to actually carry it out," and claims that those words convey an argumentative and duplicative judicial comment favoring the prosecution and diminishing the weight of the evidence. The authorities he cites state irrefutable propositions about how judicial comment should be temperate rather than argumentative and about how the court must avoid engaging in partisan advocacy (see, e.g., *People v. Cook* (1983) 33 Cal.3d 400, 408 [189 Cal.Rptr. 159, 658 P.2d 86],

overruled on another ground in *People v. Rodriguez* (1986) 42 Cal.3d 730, 765–770 [230 Cal.Rptr. 667, 726 P.2d 113]) but, since the impartial language he challenges simply helps jurors to understand the crime of stalking, fail to bolster his argument in any way. His argument without citation to relevant authority is not persuasive. (See *People v. Williams, supra,* 16 Cal.4th at p. 266.)

Second, Ibarra argues that the instruction improperly combines elements of the crime that the stalking statute enumerates specifically. The basis of his argument is the difference between the order of the elements in section 646.9, subdivision (a) ("Any person who willfully, maliciously, and repeatedly follows *or* willfully and maliciously harasses another person . . . .") and the order of the elements in CALCRIM No. 1301 ("The defendant willfully and maliciously harassed *or* willfully, maliciously, and repeatedly followed another person. . . ."). (Italics added.) He argues that the instruction fails to assure that the jurors will "understand precisely what the prosecution must prove" and "consider each element on an equal footing." We disagree. The disjunctive in both the statute and the instruction serves to correctly state the elements despite the difference. Since the difference fails to persuade us that there is a reasonable likelihood that the jury applied the instruction in a way that denied him a fair trial (*Estelle, supra,* 502 U.S. at pp. 72–73; *Clair, supra,* 2 Cal.4th at p. 663), we apply the presumption that jurors are able to correlate, follow, and understand the court's instructions (*Sanchez, supra,* 26 Cal.4th at p. 852) and reject his argument.

Third, Ibarra argues that the instruction defined the term "credible threat" as "one that *causes* the target of the threat to reasonably fear for her safety" but erroneously failed to define causation. (CALCRIM No. 1301, italics added.) His argument quotes one but ignores the other two occurrences of that term in the instruction. In order, those three occurrences are, "The defendant made a credible threat with the intent to place the other person in reasonable fear for her safety or for the safety of her immediate family," "A credible threat is one that causes the target of the threat to reasonably fear for her safety or for the safety of her immediate family and one that the maker of the threat appears to be able to carry out," and, "A credible threat may be made orally, in writing, or electronically or may be implied by a pattern of conduct or a combination of statements and conduct." (CALCRIM No. 1301.) Noting that "the threat must be made with the specific intent to cause the victim to reasonably fear for personal safety or the safety of immediate family" and that the crime focuses not on the definition of the conduct but on the perpetrator's "intent to place the victim in reasonable fear," *People v. Halgren* (1996) 52 Cal.App.4th 1223 [61 Cal.Rptr.2d 176] rejected a void-for-vagueness challenge to the definition of "credible threat" in the statute. (*Id.* at pp. 1228–1231; see § 646.9, subd. (g).) Ibarra's analogous challenge to the instruction's like definition of the term meets the same fate.

Fourth, Ibarra argues that the instruction's definition of "willfully" erroneously omits an element of knowledge. The word "willfully" implies that a person not only has "a purpose or willingness to commit the act" but also "*knows* what he is doing[,] intends to do what he is doing[,] and is a free agent." (*In re Trombley* (1948) 31 Cal.2d 801, 807 [193 P.2d 734], italics added.) Immediately before informing the jury that a person "commits an act willfully when he does it willingly or on purpose," the instruction defined "harassing" as "engaging in a *knowing* and willful course of conduct directed at a specific person that seriously annoys, alarms, torments, or terrorizes the person and that serves no legitimate purpose." (CALCRIM No. 1301, italics added.) No additional elaboration on knowledge was necessary.

Fifth, Ibarra argues that by erroneously defining "repeatedly" as "more than once" the instruction creates "a due process notice problem" that poses a danger of arbitrary and discriminatory enforcement. *People v. Heilman* (1994) 25 Cal.App.4th 391 [30 Cal.Rptr.2d 422] rejected his argument by defining the word to mean "more than one time," but he nonetheless urges us to hold to the contrary. (*Id.* at pp. 400–401.) "More than once" is a dictionary definition of the word. (American Heritage Dict. (4th ed. 2000) p. 1479.) Although he cites differing definitions from other dictionaries, the fact that a word can be defined in more than one way does not, without more, require that the court explain the word to the jury. (*People v. Forbes* (1996) 42 Cal.App.4th 599, 605 [49 Cal.Rptr.2d 836].) *Heilman* correctly decided the issue.

Finally, Ibarra argues that the instruction erroneously defined the "course of conduct" in "harassing" as "*two or more acts*" since the statute inconsistently defines the "course of conduct" as a "*series of acts.*" (Compare CALCRIM No. 1301 with former § 646.9, subd. (f), italics added.) He quotes a former version of the statute. Years before he stalked his girlfriend, the Legislature changed the definition of "course of conduct" in the statute from "series of acts" to "two or more acts." (Stats. 2002, ch. 832, § 1.) The wording of the instruction and the wording of the statute are identical.

### 16. *Collective Reference to Individual Jurors*

Ibarra argues that CALCRIM instructions generally err by collectively referring to the individual jurors as "you." By way of example, he characterizes as a "harmful" use of the word "you" a part of the instruction about the court reporter's notes: "If you decide that it is necessary, you may ask that the court reporter's notes be read to you." (CALCRIM No. 104.)

 First, Ibarra argues that the instruction's use of the "collective" word "you" would lead the jurors to conclude that the court reporter's notes would be read back "only if the *jury* as a group" were to make that request. Implicit in his argument is the assumption that the instruction uses the word "you" in the plural, not in the singular, form. The contrary assumption is equally possible. The court commits no error by not defining ordinary words of common usage that jurors are presumed to understand. (*People v. Forbes, supra*, 42 Cal.App.4th at p. 605.)

Second, the charge to the jury included a clear instruction that each juror decide the case for himself or herself: "Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors." (CALCRIM No. 3550.) Our duty is to look at the instructions as a whole, not in isolation. (*Castillo, supra*, 16 Cal.4th ·at p. 1016.) Since Ibarra fails to persuade us that there is a reasonable likelihood that the jury applied CALCRIM instructions with the word "you" in a way that denied him a fair trial (*Estelle, supra*, 502 U.S. at pp. 72–73; *Clair, supra*, 2 Cal.4th at p. 663), we apply the presumption that jurors are able to correlate, follow, and understand the court's instructions (*Sanchez, supra*, 26 Cal.4th at p. 852) and reject his argument.

### 17. *Unanimity Instruction*

 Ibarra argues that lack of a unanimity instruction prejudiced him. To eliminate the danger of a guilty verdict without unanimous agreement by the jury that the defendant committed a specific crime, the general rule requires either that the prosecutor elect among the crimes or that the court instruct the jury to agree on the same criminal act. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641].) A unanimity instruction is not required, however, if the evidence shows either one criminal act or multiple acts in a continuous course of conduct. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100 [270 Cal.Rptr. 817, 793 P.2d 23].) Since the Legislature defines stalking as a crime requiring a continuous course of conduct over a period of time, no unanimity instruction was required here. (*People v. Zavala* (2005) 130 Cal.App.4th 758, 769 [30 Cal.Rptr.3d 398]; § 646.9, subd. (e) [" 'harasses' means engages in a knowing and willful course of conduct"].)

### 18. *Cumulative Impact: Instructions*

On the premise that multiple instructional errors occurred, Ibarra argues that the cumulative impact of the errors warrants reversal even if considered individually none of the errors does. Since no instructional error occurred, Ibarra's cumulative impact argument fails for want of a valid premise. (See *People v. Heard* (2003) 31 Cal.4th 946, 982 [4 Cal.Rptr.3d 131, 75 P.3d 53],

limited on another ground in *People v. Partida* (2005) 37 Cal.4th 428, 437–438 [35 Cal.Rptr.3d 644, 122 P.3d 765].)

### 19. *Assistance of Counsel*

Ibarra argues that if his attorney's failing to object, inviting error, or failing to request modification of the instructions at issue forfeited his right to appellate review, his attorney rendered ineffective assistance of counsel. Since we have chosen in the interests of brevity and judicial efficiency to address each of Ibarra's instructional challenges on the merits, and since we have rejected each of those challenges, his ineffective assistance of counsel argument is moot.

### 20. *Imposition of Aggravated Term*

Ibarra argues that the imposition of the aggravated term without jury findings on circumstances in aggravation violated his federal constitutional rights to trial by jury and proof beyond a reasonable doubt. The Attorney General argues that Ibarra forfeited his right to appellate review and that his sentence was proper.

Preliminarily, we address the Attorney General's forfeiture argument. At the time of Ibarra's sentencing, the governing law in California was that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*People v. Black* (2005) 35 Cal.4th 1238, 1244 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*), overruled by *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 876, 127 S.Ct. 856] (*Cunningham*).) So even if Ibarra had requested a jury trial on circumstances in aggravation, his "request clearly would have been futile, because the trial court would have been required to follow our decision in *Black I* and deny the request." (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4 [62 Cal.Rptr.3d 588, 161 P.3d 1146].) He did not forfeit his right to appellate review.

So we address on the merits Ibarra's argument about the imposition of the aggravated term. At the probation and sentencing hearing, the court found, inter alia, as recommended by the probation officer, a circumstance in aggravation of prior convictions as an adult that were numerous and of increasing seriousness, found no circumstances in mitigation, and imposed double the aggravated three-year term on the stalking. (§§ 646.9, subd. (a), 667, subds. (b)–(j), 1170.12, subds. (a)–(e), 1192.7, subd. (c)(36), 12034, subd. (c); Cal. Rules of Court, rule 4.421(b)(2).) Before imposing sentence, the court read and considered the probation report that, inter alia, documented

two felony priors (a 1997 willful and malicious discharge of a firearm from a motor vehicle at another person other than an occupant of a motor vehicle and a 1991 possession of PCP for sale) and 16 misdemeanor priors from 1985 through 1995 (including three for driving under the influence, two for being under the influence of a controlled substance, and one each for reckless driving and hit and run with property damage). (§ 12034, subd. (c); Health & Saf. Code, §§ 11378.5, 11550, subd. (a); Veh. Code, §§ 23103, 23152, subd. (a), 20002, subd. (a).)

 *"Except for a prior conviction,* 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Cunningham, supra,* 549 U.S. at p. ___ [166 L.Ed.2d at p. 873; 127 S.Ct. at p. 868], italics added, quoting *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348].) "The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction. (*Cunningham, supra,* [549] U.S. at p. ___ [166 L.Ed.2d at p. 873, 127 S.Ct. at p. 868]; *Blakely*[ *v. Washington* (2004)] 542 U.S. [296,] 301 [159 L.Ed.2d 403, 124 S.Ct. 2531]; *Apprendi, supra,* 530 U.S. at p. 490; *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*)." (*People v. Black* (2007) 41 Cal.4th 799, 818 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*).) " '[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' (*Almendarez-Torres, supra,* 523 U.S. at p. 243.)" (*Black II, supra,* at p. 818.) The "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as *one legally sufficient aggravating circumstance* has been found to exist by the jury, has been admitted by the defendant, or *is justified based upon the defendant's record of prior convictions.*" (*Id.* at p. 816, italics added.) That is so here.

### 21. *Cumulative Impact: Overall*

 On the premise that multiple errors occurred, Ibarra argues that the cumulative impact of the errors warrants reversal even if considered individually none of the errors does. Since no error occurred, Ibarra's cumulative impact argument fails for want of a valid premise. (See *People v. Heard, supra,* 31 Cal.4th at p. 982, limited on another ground in *People v. Partida, supra,* 37 Cal.4th at pp. 437–438.)

## DISPOSITION

The judgment is affirmed.

Harris, Acting P. J., and Wiseman, J., concurred.

On November 27, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 30, 2008, S159436. George, C. J., did not participate therein.