Filed 11/20/25  P. v. Noyes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C101672 |
| v. | (Super. Ct. No. 20F6557) |
| JAMES JOSHUA NOYES, | |
| Defendant and Appellant. | |

A jury convicted defendant James Joshua Noyes of first degree murder and evading a pursuing officer.  Defendant admitted a prior strike conviction.  The trial court found that defendant discharged a firearm causing death, and that he committed each offense while released on bail or his own recognizance in two other cases.  Defendant previously had pleaded no contest to unlawful possession of a firearm and ammunition.  The trial court sentenced defendant to state prison for an indeterminate term of 75 years to life consecutive to a determinate term of 17 years.[1]

---

[1] A portion of the determinate term was imposed in connection with two other cases that are not part of this appeal.

Defendant claims his murder conviction must be reversed because the prosecutor misstated the law during closing argument. The claim is forfeited because defendant did not object to the challenged comments or request a curative admonition from the trial court. Anticipating this conclusion, defendant asserts his trial counsel provided ineffective assistance. Because defendant has not carried his appellate burden of demonstrating ineffective assistance of counsel, we will affirm the judgment.

## BACKGROUND

On October 4, 2020, sometime between 2:00 and 3:00 a.m., V.T. and T.J. pulled into a Redding parking lot in V.T.'s RV. V.T. lived in the vehicle and parked it there for weeks at a time. T.J. lacked permanent housing and often drove the RV for V.T. A few minutes after their arrival, Emmanuel Vega and another man rode their bicycles to the parking lot and started talking with V.T. and J.T. Other unhoused individuals were at the parking lot that night.

Defendant came to the parking lot with another man in a distinctive car that defendant owned. He walked over to the RV and asked the group "who was in charge" or "who was running the show." When no one else answered, Vega responded: "Well, I guess that's me." Apparently referring to California's prison classification system, defendant referred to himself as a "Level 4." Vega responded: "Oh, you beat me by one because I'm a Level 3." After arguing about who was tougher, defendant started to walk away, at which point Vega called him a "290," meaning a sex offender. Vega said something like "you ain't tough" or "I'll kick your ass." Defendant lifted his shirt to show a handgun in his waistband.

Vega approached defendant while holding a small aluminum T-ball bat; he referred to defendant's handgun as a "little BB gun" and told defendant to go ahead and shoot him. Defendant backed away and pointed his gun at Vega. Vega told defendant he would "kick his ass." Defendant responded: "Fuck you, I'll just shoot you." Vega again dared defendant to shoot. Defendant fired two rounds. The first bullet missed, but the second

2

bullet hit Vega after he turned to the side, penetrating his heart and both lungs. Defendant ran back to his car, which sped away. Vega died.

About nine hours after the shooting, defendant led police officers on a high speed chase through Redding, ultimately crashing his car. The murder weapon was never recovered, but defendant's girlfriend testified that defendant had carried a handgun with him.

## DISCUSSION

Defendant claims his murder conviction must be reversed because the prosecutor misstated the law during closing argument.

"It is considered misconduct to misstate the law to the jury, and bad faith is not required. [Citation.] But a prosecutor is allowed to vigorously argue the case and is afforded 'significant leeway' in discussing the facts and the law in closing argument. [Citations.]" (*People v. Azcona* (2020) 58 Cal.App.5th 504, 516.)

Defendant takes issue with the prosecutor's description of the level of provocation required to reduce a first degree murder to second degree murder. The prosecutor told the jury that if it found that defendant was "legally provoked," that fact could reduce "the murder from a first degree to a second degree . . . or from second degree to voluntary manslaughter." The prosecutor reiterated that if defendant "was legally provoked, . . . that can make it drop down a level," i.e., "[f]irst degree, then second degree, then manslaughter." After saying that being "legally provoked" was "very different than just being provoked," the prosecutor went on to describe the elements of heat of passion voluntary manslaughter, including the "legal provocation" requirement: "The law says to qualify for this, the defendant had to have been provoked and he had to act rashly or under the influence of intense emotion that obscured his judgment as a result of that provocation. And that the same provocation . . . whatever that provocation was, it would have caused a person of average disposition to act rashly and without deliberation."

3

Defense counsel did not object to those comments.  "As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' [Citation.]  The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct."  (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*); see *People v. Hoyt* (2020) 8 Cal.5th 892, 942-943.)

Defendant does not argue that an objection would have been futile or that an admonition would not have cured any harm arising from the prosecutor's statements. Indeed, "[a] prosecutor's misstatements of law are generally curable by an admonition from the court."  (*Centeno, supra*, 60 Cal.4th at p. 674.)  And, as in *Centeno*, "[n]othing in this record indicates that an objection would have been futile" or "that a prompt objection and admonition would not have cured the harm."  (*Ibid*.)  The claim is therefore forfeited.

Anticipating our conclusion, defendant argues his counsel's failure to object constituted ineffective assistance.  " 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.]" (*Centeno, supra*, 60 Cal.4th at p. 674.)  Such a defendant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice."  (*Ibid*.)  Moreover, " '[u]nless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citation.]  When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged,

4

defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission. [Citations.]' [Citation.]" (*Id*. at pp. 674-675.)

Here, the prosecutor's comments could be construed as suggesting that the same standard of "legal provocation" could be applied to reduce first degree murder to second degree murder, and could also be applied to reduce murder to voluntary manslaughter. That is not the law. An objective standard applies to the level of provocation necessary to reduce murder to voluntary manslaughter: "the provocation must be so great that . . . it 'would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.' " (*People v. Jones* (2014) 223 Cal.App.4th 995, 1000-1001 (*Jones*), quoting CALCRIM No. 570.) However, "a subjective test applies to provocation as a basis to reduce malice murder from the first to the second degree: it inquires whether the defendant in fact committed the act because he was provoked. The rationale is that provocation may negate the elements of premeditation, deliberateness and willfulness that are required for that degree of the crime." (*Id*. at p. 1000.)

But even if the prosecutor misstated the law, our present inquiry is whether defense counsel's failure to object fell below an objective standard of reasonableness. " '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one . . . .' [citation], and 'a mere failure to object to . . . argument seldom establishes counsel's incompetence' [citation]." (*Centeno, supra*, 60 Cal.4th at p. 675.) Even where an objection would have been successful, competent counsel "could have preferred not to draw the jurors' attention to particular comments by the prosecutor by objecting to them." (*People v. Huggins* (2006) 38 Cal.4th 175, 206.) We perceive such a conceivable tactical purpose here. Defense counsel's strategy in his own closing argument was to focus exclusively on self-defense: "this case is about whether it was self-defense or not." Although the prosecutor suggested that an objective test applied to the provocation required to reduce

5

the degree of murder, defense counsel might have decided to allow the brief comments to pass without objection because objecting would risk causing the jury to focus on the degree of murder rather than on whether the killing was committed in self-defense. Defense counsel could have had a legitimate tactical reason for not objecting to the prosecutor's comments.

Defendant also fails to demonstrate prejudice. The jury was instructed to ignore the argument of counsel where it conflicted with the jury instructions; it was instructed on the prosecution's burden of proving the charges beyond a reasonable doubt; and it was instructed with CALCRIM Nos. 521, 522, and 570. Those instructions properly conveyed the level of provocation required to reduce murder from first to second degree, and to reduce murder to voluntary manslaughter. (*Jones, supra*, 223 Cal.App.4th at pp. 1000-1001.) Specifically, CALCRIM No. 521 correctly informed the jury that defendant must have "acted willfully, deliberately, and with premeditation" in order to be found guilty of first degree murder. And CALCRIM No. 522 informed the jury: "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide." Read together, the instructions accurately informed the jury that the provocation necessary to reduce murder from first to second degree was simply that which raised a reasonable doubt as to whether defendant acted willfully, deliberately, and with premeditation. (*Jones*, at p. 1001.)

CALCRIM No. 570 then informed the jury that in order to reduce murder to voluntary manslaughter on a heat of passion theory, "[i]t is not enough that the defendant simply was provoked," but rather the provocation must have caused him to act rashly due to an intense emotional reaction that obscured his reasoning or judgment, and that the provocation would have caused a person of average disposition to have acted rashly and without due deliberation. "It is here, and only here, that the jury is instructed that provocation alone is not enough for the reduction; the provocation must be sufficient

6

to cause a person of average disposition in the same situation, knowing the same facts, to have reacted from passion rather than judgment." (*Jones, supra*, 223 Cal.App.4th at p. 1001.)

We presume "that jurors are able to correlate, follow, and understand the court's instructions." (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1183.) Read together, the instructions accurately described the law. And with that correct understanding of the law, the jury was more than justified in concluding that defendant acted willfully, deliberately, and with premeditation when he shot Vega to death in the parking lot. Indeed, before pulling the trigger, defendant told Vega: "Fuck you, I'll just shoot you."

Defendant has not established ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


_____/S/_____
MAURO, J.



We concur:



_____/S/_____
ROBIE, Acting P. J.



_____/S/_____
KRAUSE, J.