Filed 7/30/14  P. v. Dang CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>THANH TOAN DANG,<br><br>　　　Defendant and Appellant. | H038871<br>(Santa Clara County<br>Super. Ct. No. C1094291) |

## I.　　INTRODUCTION

Defendant Thanh Toan Dang appeals after a jury convicted him of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187, 664, subd. (a))[1] and assault with a semiautomatic firearm (§ 245, subd. (b)).  The jury found true allegations that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (d)) during the attempted murder and allegations that defendant personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)) during the assault with a semiautomatic firearm.  The trial court found true allegations that defendant had previously been convicted of a prior serious felony (§ 667, subd. (a)) and a strike (§§ 667, subds. (b)-(i), 1170.12).  The trial court sentenced defendant to a prison term of 30 years to life.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

On appeal, defendant contends: (1) there was insufficient evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated; (2) the jury's finding that the attempted murder was willful, deliberate, and premeditated must be stricken because it was not alleged in the accusatory pleading; (3) the trial court committed judicial misconduct by overruling a defense objection in a way that demeaned trial counsel in front of the jury; (4) the trial court erred by instructing the jury pursuant to CALCRIM No. 224, which referred to "innocence" instead of "a finding of not guilty"; and (5) the combined prejudice of the judicial misconduct and instructional error requires reversal. We requested supplemental briefing on sentencing issues.

We find no errors requiring reversal of defendant's convictions. However, we will reverse the judgment and remand for resentencing.

## II.    BACKGROUND

The charges in this case arose from a shooting at the Anh Thu restaurant in the early hours of November 20, 2010. The shooting victim was Le Tran, who had bullet wounds in his leg and his back. At trial, defendant primarily contested the issue of identity.

### A.    *Prior Altercation Between Defendant and Tran*

A few months before the charged incident, Tran went to the Anh Thu restaurant with his sister. Tran was involved in a fight: he was punched and kicked by at least five men. According to Tran, he was "jumped" by a person who did not like him. Tran had been "getting close to" the person's ex-girlfriend.

### B.    *Charged Incident*

Tran went to the Anh Thu restaurant on November 20, 2010 with a friend. When he walked inside, he saw the person he had previously fought with at that restaurant. The person was sitting with a big group of people. The person looked at him, walked over to him, and pulled out a gun, without saying anything. The person was within two to three

2

feet from Tran when he pulled out the gun. Tran, who had walked towards the person, told the person " 'shoot me right here,' " pointing to his forehead. Instead, the person shot downward, into his knee. Tran then "got jumped" by five or six people who beat him up. Tran was then shot in the back.

Tran did not identify defendant at trial, but he had previously identified defendant at a preliminary hearing. Tran had also selected defendant from a photographic lineup shown to him when he was in the hospital following the incident. While at the hospital after the shooting, Tran told the police that defendant was the one who shot him both in the leg and in the back.

A number of other witnesses present during the incident testified. One, Dennis Thomas, heard two guys arguing. He then heard screaming, turned, and saw a male with a gun. He ducked under a table and heard a gunshot. Then, after a pause of about 30 seconds, he heard a second shot. In between the two shots, Thomas heard shouting in a different language. Thomas did not recognize defendant at trial.

Two of Thomas's friends also saw a male with a gun and heard two shots, but neither recognized defendant at trial. These two witnesses described the shooter to police as an Asian male, 30 to 35 years old, about five feet six inches tall, with darker skin and short hair.

### C.     *Investigation*

When police responded to the restaurant, there were 65 to 85 people outside. Tran was on the floor inside the restaurant. Tran had an entry bullet wound in his back and a bullet wound on his right leg, near his knee. Tran also had a black eye. Two .40-caliber bullet casings were found in the restaurant.

Police conducted a vehicle stop of a car leaving the restaurant's parking lot. Three people were in the car: driver Nghia Doan, front passenger Yen Ho, and rear passenger Julie Pham. A search of the vehicle revealed two handguns. One of the guns was an inoperable .22-caliber gun. The other gun was an operable .40-caliber semiautomatic

pistol. Testing revealed that the casings found inside the restaurant were fired from the .40-caliber semiautomatic pistol.

Yen Ho was interviewed by the police. Initially, Ho denied knowing who the shooter was but acknowledged she could identify him. Then, Ho denied that she had seen the person with the gun. Later, she admitted that the person with the gun was someone who had been in her group at the restaurant. She then stated that the person with the gun was "Timmy," a friend of her boyfriend. Ho saw Timmy shoot the first shot and heard a second shot. She later saw Timmy outside the restaurant, still holding the gun. Timmy had an altercation outside the restaurant and was then pulled into a car by some of his friends. Ho was shown some photographs; she identified two as looking similar to Timmy; one of the photos apparently depicted defendant. At trial, Ho claimed she told the police what they wanted to hear, "not the truth."

Waitress Maria Bui was also interviewed by the police, and she identified a photo of defendant as Timmy, who was a regular at the restaurant. On the night of the shooting, the restaurant was very full. After Bui came out of the restroom, she heard two pops, then ducked. She saw people running outside, and she went outside also. At trial, Bui did not recognize defendant.

### D.     Defense Evidence

No suitable DNA profiles were found on the .40-caliber pistol. Defendant was excluded as a possible contributor to the DNA found on the .22-caliber gun. There was a CODIS database hit on Tran's DNA. A letter was sent out after the database hit, suggesting further follow-up at a local crime lab.

### E.     Charges, Verdicts, and Sentence

On August 11, 2011, the District Attorney filed an information charging defendant with attempted murder (§§ 187, 664, subd. (a); count 1) and assault with a semiautomatic firearm (§ 245, subd. (b); count 2). The information alleged that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (d)) during the attempted

4

murder and that defendant personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)) during the assault with a semiautomatic firearm. The information further alleged that defendant had previously been convicted of a prior serious felony (§ 667, subd. (a)) and a prior strike (§§ 667, subds. (b)-(i), 1170.12), and that he had served two prior prison terms (§ 667.5, subd. (b)).

Although not alleged in the information, the jury was instructed that if it found defendant committed attempted murder, it had to also determine whether the attempted murder was willful, deliberate, and premeditated. (See § 664, subd. (a).)

The jury found defendant guilty of both counts and found all of the special allegations true, including the allegation that the attempted murder was willful, deliberate, and premeditated. The trial court found the prior serious felony and strike allegations true, but it found the prior prison term allegations not true.

The trial court sentenced defendant to a prison term of 30 years to life. The court imposed a term of 25 years to life for count 1 (the attempted murder) consecutive to a five-year term for the prior serious felony allegation. The trial court imposed a determinate term of 28 years for count 2, but it stayed that sentence pursuant to section 654.

### III.    DISCUSSION

#### A.    *Sufficiency of the Evidence:  Allegation that Attempted Murder was Willful, Deliberate, and Premeditated*

Defendant contends there was insufficient evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated.

#### 1.    Standard of Review

Under the federal Constitution's due process clause, there is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime

5

beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) In addressing a claim of insufficient evidence, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

### 2. Analysis

" ' "Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. [Citations.]' [Citation.] ' "Premeditation and deliberation can occur in a brief interval. 'The test is not time, but reflection. "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " [Citation.]' [Citations.]" (*People v. Solomon* (2010) 49 Cal.4th 792, 812 (*Solomon*).)

"*People v. Anderson* (1968) 70 Cal.2d 15 . . . (*Anderson*) discusses three types of evidence commonly shown in cases of premeditated murder: [1] planning activity, [2] preexisting motive, and [3] manner of killing. [Citation.]" (*Solomon, supra,* 49 Cal.4th at p. 812.) However, " '*Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation.' [Citations.]" (*Ibid.*)

Defendant "concedes that the record contains some evidence of motive"—specifically, that he shot Tran because of Tran's involvement with defendant's ex-girlfriend. Defendant contends, however, that the record is "devoid of evidence of planning activity," and that neither of the two shots fired shows a manner of killing that would support a finding of premeditation and deliberation. The Attorney General acknowledges there is no evidence of "elaborate planning activity," but contends that the evidence of motive and manner of killing are sufficient to support the jury's finding of premeditation and deliberation.

6

Initially, we find it appropriate to accept defendant's concession that the record contains evidence of motive. (See *Anderson, supra,* 70 Cal.2d at p. 27 [inference of motive can be shown by "facts about the defendant's *prior* relationship and/or conduct with the victim."].) Although Tran was a reluctant witness at trial, the evidence showed that defendant held a grudge against Tran for Tran's involvement with defendant's ex-girlfriend, and that defendant had previously targeted Tran with violence. The evidence of defendant's prior relationship with Tran and his prior violent conduct toward Tran supported an inference that defendant had a motive to kill Tran.

Next, we find there was evidence of planning activity by defendant. (See *Anderson, supra,* 70 Cal.2d at p. 26 [planning may be shown by "facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing"].) "[D]efendant brought a loaded handgun with him on the night [Tran] was [shot], indicating he had considered the possibility of a violent encounter. [Citation.]" (*People v. Lee* (2011) 51 Cal.4th 620, 636.) Also, defendant walked over to Tran right after Tran walked into the restaurant, which was the site of their previous altercation. This evidence supports an inference that defendant was watching for Tran's arrival and that he had brought a loaded gun in anticipation of an encounter with Tran.

Third, we find that the manner of the attempted killing supported an inference that defendant acted willfully, deliberately, and with premeditation. (See *Anderson, supra,* 70 Cal.2d at p. 27 [manner of killing supports a deliberation and premeditation finding when it was "so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way"].) Although the first shot was to Tran's leg, the second one was to his back, 30 seconds later, when Tran was already rendered helpless after being assaulted by a group. A gunshot to the back can support a finding of deliberation and premeditation. (See *People v. Brito* (1991) 232 Cal.App.3d 316, 323 [defendant "shot his unarmed victim in the

back"].)  The jury could reasonably find that because defendant shot Tran in the back after shooting him in the leg, he "did not want merely to wound [Tran]; he wanted to make certain [Tran] died."  (*People v. Bolin* (1998) 18 Cal.4th 297, 332.)

In sum, we find substantial evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated.

### B.  *Failure to Allege that Attempted Murder was Willful, Deliberate, and Premeditated*

Defendant contends the jury's finding that the attempted murder was willful, deliberate, and premeditated must be stricken because it was not alleged in the accusatory pleading.

### 1.  Proceedings Below

At the beginning of the preliminary hearing, the prosecutor informed the court that "the People do intend to prove premeditation deliberation."  At the end of the preliminary hearing, the prosecutor noted that premeditation and deliberation had not been alleged in the complaint, but he asserted, "I think we've had it here."  The prosecutor argued that after Tran challenged defendant to shoot him in the head, defendant had "time to deliberate."  The magistrate found that the issue was "problematic" and that "This court doesn't believe there's enough evidence for premeditation."  The prosecutor urged the magistrate to find sufficient evidence based on the second shot.  The magistrate clarified that he was only finding insufficient evidence as to premeditation and deliberation "before that first shot."  Defendant argued that there was insufficient evidence "to hold on a deliberation allegation."  The trial court noted, "It sounds like we're going to have a [section ] 995 [motion]" and held defendant to answer "on the charges that are in the complaint here in the allegation."

The information did not allege that the attempted murder was willful, deliberate, and premeditated.  However, the cover sheet of the information indicates that the "Charge Range" for the attempted murder count was "life/5-7-9."  A life term would be the

8

appropriate sentence for attempted murder only if it was willful, deliberate, and premeditated. (§ 664, subd. (a).)

None of the reported discussions about jury instructions refer to the premeditation and deliberation allegation. There is a notation in the clerk's transcript that CALCRIM No. 601, which states the requirements for a finding of deliberation and premeditation in an attempted murder case, was requested by both parties. CALCRIM No. 601 was read to the jury.[2]

The prosecutor began her argument to the jury by stating that defendant was "guilty of willful, premeditated, deliberate attempted murder." She argued that the jury should find the deliberation and premeditation allegation true. In defendant's argument to the jury, trial counsel disputed that defendant was the shooter, that the evidence showed an intent to kill, and that the evidence showed premeditation and deliberation.

The verdict forms included one entitled "Willful, deliberation and premeditation allegation." The jury found the allegation true.

---

[2] CALCRIM No. 601 provided: "If you find the defendant guilty of attempted murder under Count 1, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation. . . . [¶] The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting. The attempted murder was done willfully and with deliberation and premeditation if the defendant acted with that state of mind. [¶] The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate or premeditated. The amount of time required for deliberation and premeditation may vary from [] person to person and according to the circumstances. A decision to kill ma[de] [rashly], impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

9

## 2.     Analysis

"[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. . . .  The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."  (§ 664, subd. (a).)

Three cases are pertinent to this issue:  *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*); *People v. Arias* (2010) 182 Cal.App.4th 1009 (*Arias*); and *People v. Houston* (2012) 54 Cal.4th 1186, 1225 (*Houston*).  Defendant claims that *Arias* is "virtually indistinguishable" from his case,while the Attorney General maintains that "this case is more analogous to *Houston.*"

We begin by examining *Mancebo*, as it served as the primary basis for the analysis in *Arias*.  The jury in *Mancebo* found true two "One Strike" circumstances as to each of two sex crimes against different victims.  As to each crime, one of the circumstances was gun use.  The jury also found true a gun use enhancement allegation as to each crime. (*Mancebo*, *supra*, 27 Cal.4th at p. 738.)  The One Strike statute precluded the gun use from being used as the basis for an enhancement if it was used as a One Strike circumstance.  To avoid this prohibition, the trial court at sentencing substituted for the gun use circumstance a "multiple victim" circumstance that had neither been alleged in the information nor found true by the jury.  (*Mancebo*, at pp. 738-739.)  The defendant challenged the imposition of the gun use enhancements on the ground that the multiple victim circumstance had been neither pleaded nor proved.  The California Supreme Court agreed.  "[N]o factual allegation in the information or pleading in the statutory language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his multiple convictions as a basis for One Strike sentencing under

10

section 667.61, subdivision (a).  Thus, the pleading was inadequate because it failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a) *and* use the circumstance of gun use to secure additional enhancements under section 12022.5(a)." (*Mancebo*, at p. 745.)

The defendant in *Arias* challenged the imposition of life terms for two attempted murder convictions on the ground that his right to due process had been violated due to the fact that the information failed to allege that the attempted murders had been willful, deliberate, and premeditated.  (*Arias*, *supra*, 182 Cal.App.4th at p. 1016.)  The trial court instructed the jury on the special allegation.  (*Id.* at p. 1017.)  However, "[t]he jury's attempted murder verdicts did not include special findings as to premeditation and deliberation, but found 'first degree attempted murder' as to both victims."[3]  (*Ibid.*)  The Attorney General claimed that the defendant had forfeited the claim by failing to object to the information below.  (*Ibid.*)  The Court of Appeal, relying on *Mancebo*, rejected the Attorney General's argument.  (*Arias*, at pp. 1017-1018.)  "Here, neither the information nor any pleading gave defendant notice that he was potentially subject to the enhanced punishment provision for attempted murder under section 664, subdivision (a)." (*Arias*, at p. 1019.)

The final case in this trio is *Houston*.  In *Houston*, the indictment failed to allege that the 10 attempted murder counts were willful, deliberate, and premeditated. (*Houston*, *supra*, 54 Cal.4th at pp. 1225-1226.)  After the defense had presented one day of its case to the jury, the court provided counsel with a "preliminary draft" of the verdict forms.  This draft included in the verdict forms the special allegation for the attempted

---

[3] "California law does not define attempted murder in terms of degrees.  Rather, section 664, subdivision (a) provides that the punishment for attempted murder can be increased from the prescribed maximum determinate term to a life sentence when it is pleaded and proved that the murder attempted was willful, deliberate, and premeditated." (*Arias*, *supra*, 182 Cal.App.4th at p. 1011, fn. 2.)

11

murder counts.  (*Houston*, at p. 1226.)  The court told the attorneys that it understood that the prosecution "'is intending to charge premeditated attempted murder'" and told them to "'*tell me now*'" if "'*that's not right.*'"  The trial court also pointed out that this "'type of attempted murder . . . [is] punished by life imprisonment rather than five, seven, nine.'"  (*Ibid.*)  A week later, the court told the attorneys that it would include the special allegation in its verdict forms.  The court instructed the jury on the special allegation, and the defense did not object.  (*Ibid.*)  The jury found the special allegations true, and life terms were imposed for the attempted murder counts.  (*Ibid.*)

On appeal, the defendant challenged the propriety of life terms for the attempted murder counts because the prosecution had violated his due process rights by failing to plead the special allegation.  The California Supreme Court found that, due to the trial court's statements regarding the special allegation, the defendant had the opportunity to object below and had forfeited the claim by failing to do so.  (*Houston*, *supra*, 54 Cal.4th at pp. 1226-1227.)  "Had defendant raised a timely objection to the jury instructions and verdict forms at any of these stages of the trial on the ground that the indictment did not allege that the attempted murders were deliberate and premeditated, the court could have heard arguments on whether to permit the prosecutor to amend the indictment. [Citation.]  If the trial court was inclined to permit amendment, defendant could have requested a continuance to permit him to prepare a defense.  [Citation.]  On the facts here, defendant received adequate notice of the sentence he faced, and the jury made an express finding that the attempted murders were willful, deliberate, and premeditated.  A timely objection to the adequacy of the indictment would have provided an opportunity to craft an appropriate remedy.  Because defendant had notice of the sentence he faced and did not raise an objection in the trial court, he has forfeited this claim on appeal." (*Houston*, at pp. 1227-1228.)

While declining to express an opinion on whether *Arias* was correct, the California Supreme Court distinguished *Arias*.  "[I]t is unclear when the trial court [in *Arias*] issued

12

its proposed jury instructions and verdict forms to the parties and whether this issue was discussed.  In contrast, the trial court here actually notified defendant of the possible sentence he faced before his case was submitted to the jury, and defendant had sufficient opportunity to object to the indictment and request additional time to formulate a defense. In addition, the jury was properly instructed and made an express finding that the attempted murders were willful, deliberate, and premeditated."  (*Houston*, *supra*, 54 Cal.4th at p. 1229.)

The only question here is whether this case is governed by *Arias* or by *Houston*. We agree with the Attorney General that *Houston* controls here.

Defendant in this case had more notice of, and therefore opportunity to object to, the prosecution's plan to prove that the attempted murder was willful, deliberate, and premeditated than did the defendants in either *Houston* or *Arias.*  In *Houston,* the defense gained this knowledge during the defense case.  In *Arias,* the defense gained this knowledge at the instruction conference.  Here, the defense was well aware of the prosecution's intent to prove that the attempted murder was willful, deliberate, and premeditated before the trial even began, as the issue was raised at the preliminary hearing.  The instruction on the deliberation and premeditation allegation was requested by both parties.  Moreover, although the information did not expressly include the deliberation and premeditation allegation, it did state that a life term was within the charge range—a term that could only be imposed if the attempted murder was found to be willful, deliberate, and premeditated.  This early notice of the prosecution's intent to pursue a true finding on the special allegation was adequate to provide the defense with an opportunity to object based on the special allegation's absence from the information and to seek additional time to prepare to contest it if necessary.

An additional point upon which this case is like *Houston* and unlike *Arias* is that here, as in *Houston,* the "proof" requirement of section 664, subdivision (a) was not violated.  The jury made an express true finding that the attempted murder was willful,

13

deliberate, and premeditated.  In contrast, in *Arias* the jury found only that the crime was " 'first degree attempted murder,' " and there was no indication that the jury was instructed that a " 'first degree' " finding was the equivalent of a finding that the attempted murders were willful, deliberate, and premeditated.  (*Arias*, *supra*, 182 Cal.App.4th at p. 1017.)

In sum, "[b]ecause defendant had notice of the sentence he faced and did not raise an objection in the trial court, he has forfeited this claim on appeal."  (*Houston, supra*, 54 Cal.4th at p. 1228.)

## C.    *Judicial Misconduct*

Defendant contends the trial court committed judicial misconduct by overruling a defense objection in a way that demeaned trial counsel in front of the jury.

### 1.    **Proceedings Below**

During the prosecutor's rebuttal argument, defense counsel objected twice.  First, the prosecutor argued that Maria Bui testified that she had approached "Timmy" and asked him "why are you doing this at my workplace?"  Defense counsel stated, "Objection.  Facts not in evidence about Maria Bui speaking to Timmy outside the restaurant."  The trial court responded by telling the jury, "Ladies and gentlemen, the statements of counsel are not evidence.  It's up to you to decide what the evidence is.  It's not what he says.  It may not be what she says.  The court reporter can look it up for you.  All right?"  The trial court then stated, "Move on."

Later, the prosecutor discussed the defense testimony about Tran's DNA.  The prosecutor noted that she had asked one of the witnesses whether the defense could have had further testing done, but that the defense had not done such testing.  Defense counsel stated, "Objection.  Shifting the burden to defense."  The trial court stated, "Overruled. Let's stop interrupting with little speeches to the jury.  Your turn is over.  Now it's her turn.  Okay?  [¶]  If you have a legal objection, that's fine."  Defense counsel responded,

14

"That was my legal objection, Your Honor."  The trial court replied, "That isn't a legal objection.  Overruled.  [¶]  Let's move on."

### 2.    Analysis

Defendant contends that the trial judge committed misconduct when he overruled defense counsel's objection to the prosecutor's argument about the DNA evidence.

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."  (§ 1044.)

However, "[a] 'trial court commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression that it is allying itself with the prosecution.'  [Citations.]  Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trials.  [Citation.]  When 'the trial court persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not believed by the judge . . . it has transcended so far beyond the pale of judicial fairness as to render a new trial necessary.'  [Citation.]"  (*People v. Sturm* (2006) 37 Cal.4th 1218, 1233 (*Sturm* ).)

In *Sturm,* a trial judge committed misconduct by engaging in a pattern of disparaging defense counsel and belittling defense witnesses, conveying the impression that he favored the prosecution.  (*Sturm, supra,* 37 Cal.4th at p. 1238.)  Among other things, the judge stated that federal grants received by a defense pharmacology expert had " 'contributed to the federal deficit' "; told a defense psychologist that she used too many adjectives and adverbs and embellished her answers, and suggested her testimony was inconsequential; disparaged defense counsel in front of the jury, stating, inter alia, that he was attempting to elicit improper evidence; and interposed its own objections to defense

15

counsel's questions over 30 times. (*Id.* at pp. 1233-1237, 1239-1241.) While "no one instance" required reversal, the cumulative effect of the misconduct did. (*Id.* at p. 1243.)

Here, the trial court did not " 'persistently make[] discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression that it is allying itself with the prosecution.' " (*Sturm, supra,* 37 Cal.4th at p. 1233.) Defendant complains about only one set of comments by the trial court. "The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial. [Citation.]' " (*People v. Harris* (2005) 37 Cal.4th 310, 347.) The comments by the trial court here did not meet this standard and thus did not constitute judicial misconduct.

### D. CALCRIM No. 224

Defendant contends the trial court erred by instructing the jury pursuant to CALCRIM No. 224, because the instruction referred to " 'innocence' " instead of "a 'finding of not guilty.' "

#### 1. Proceedings Below

At one of the jury instruction conferences, the parties agreed that the trial court should give CALCRIM No. 224. As read to the jury, that instruction provided: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is [that] the defendant is guilty. [¶] If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to *innocence* and the other to guilt, you must accept the one that points to *innocence*. However, when

16

considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." [Italics added.]

## 2. Analysis

Defendant contends that CALCRIM No. 224's "[u]se of the term 'innocence' was misleading and lightened the state's burden of proof in violation of due process." Defendant acknowledges that the appellate courts in *People v. Anderson* (2007) 152 Cal.App.4th 919 (*Anderson*) and *People v. Ibarra* (2007) 156 Cal.App.4th 1174 (*Ibarra*) have rejected similar challenges to CALCRIM No. 224, but he argues that the reasoning of those cases was "flawed."

In *Anderson*, the defendant contended that "CALCRIM No. 224 improperly couches the jury's choices in terms of whether the circumstantial evidence points to him being guilty or innocent, rather than being guilty or not guilty," which placed "a burden on him to prove his innocence." (*Anderson, supra,* 152 Cal.App.4th at p. 932.) The court explained that although a defendant can be found not guilty even if "the evidence as a whole" does not "prove his innocence" (*ibid.*), specific items of evidence *can* "tend to prove innocence" (*id.* at p. 933). "CALCRIM No. 224 simply recognizes this distinction when the jury is considering the circumstantial evidence as a whole." (*Id.* at p. 933.)

In *Ibarra*, the defendant similarly argued that "CALCRIM No. 224 improperly uses the language of 'innocence' and 'guilt' in violation of the fundamental principle of criminal law that the prosecution has the burden of proof of guilt beyond a reasonable doubt." (*Ibarra, supra,* 156 Cal.App.4th at p. 1187.) The court rejected this claim, based on the reasoning of *Anderson,* concluding: "CALCRIM No. 224 correctly states the law." (*Ibid.*)

The California Supreme Court has also rejected a similar instructional challenge. In *People v. Crew* (2003) 31 Cal.4th 822 (*Crew*), the defendant pointed out that a number of instructions, including CALJIC No. 2.01—which contains similar language to CALCRIM No. 224—"referred to 'guilt or innocence.' " (*Id.* at p. 847.) The defendant

17

argued that "[t]his phrase . . . relieved the prosecution of its burden of proof by implying that the issue was one of guilt or *innocence* instead of whether there was or was not a reasonable doubt about defendant's guilt." (*Id.* at pp. 847-848.) The court found it was "not reasonably likely that the jury would have misapplied or misconstrued the challenged instructions," particularly since the instruction "expressly reiterate[d] that defendant's guilt must be established beyond a reasonable doubt. [Citation.]" (*Id.* at p. 848.) The court noted that the instruction "use[d] the word 'innocence' to mean evidence less than that required to establish guilt, not to mean the defendant must establish innocence or that the prosecution has any burden other than proof beyond a reasonable doubt," and that "the jury was repeatedly instructed on the proper burden of proof. [Citations.]" (*Ibid.*)

We agree with the *Anderson* and *Ibarra* courts that CALCRIM No. 224 correctly states the law. Moreover, there is no reasonable probability that the jury misunderstood the instruction. As given here, CALCRIM No. 224 reminded the jury that it could not rely on circumstantial evidence to conclude defendant was guilty unless "the People have proved each fact essential to that conclusion beyond a reasonable doubt," and "the jury was repeatedly instructed on the proper burden of proof." (See *Crew, supra,* 31 Cal.4th at p. 848.)

### E.   *Cumulative Prejudice*

Defendant contends that together, the judicial misconduct and instructional error were prejudicial. However, we have found that the trial court did not commit judicial misconduct and did not err by reading CALCRIM No. 224 to the jury. Thus, there were no errors to aggregate and no cumulative prejudice.

### F.   *Sentencing*

At the September 28, 2012 sentencing hearing, the trial court sentenced defendant "on count 1, and the Penal Code section 12022.53(d) [allegation], . . . to a term of 25

18

years to life in state prison," consecutive to a five-year term for the prior serious felony allegation (§ 667, subd. (a)), for an aggregate indeterminate term of 30 years to life.

The court next sentenced defendant on count 2 and the associated allegations. As to the substantive offense (assault with a semiautomatic firearm), the court imposed "the aggravated term of ten years." The court imposed a consecutive 10-year term for the firearm use enhancement (§ 12022.5, subd. (a)), a consecutive three-year term for the great bodily injury enhancement (§ 12022.7, subd. (a)), and a consecutive five-year term for the prior serious felony allegation (§ 667, subd. (a)). The court then stayed that 28-year term pursuant to section 654.

Despite the trial court's prior finding that defendant had a prior felony conviction that qualified as a strike (§§ 667, subds. (b)-(i), 1170.12), the trial court did not apply the provisions of the Three Strikes law to either count 1 or count 2.

On October 5, 2012, the trial court held another hearing. The court acknowledged that it had made some errors as to count 2 at the initial sentencing hearing. Specifically, the court had imposed "the aggravated term of ten years" for count 2 when the upper term was actually nine years (see § 245, subd. (b)), and the court had not doubled the term for count 2 as required by the Three Strikes law (see §§ 667, subds. (b)-(i), 1170.12). The court indicated it could not correct these errors by recalling defendant's sentence pursuant to section 1170, subdivision (d) because correcting the errors would result in a greater sentence.[4] The court indicated it would "follow" case authority indicating that an appellate court may remand for resentencing.

---

[4] Section 1170, subdivision (d)(1) provides in pertinent part: "When a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the secretary, the court may, within 120 days of the date of commitment on its own motion, . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."

19

The prosecutor then noted that the trial court had also erred in calculating defendant's sentence for count 1. The prosecutor asserted that the trial court should not have imposed a term of 25 years to life for the attempted murder and the allegation under section 12022.53, subdivision (d). Instead, the court should have imposed a term of life with the possibility of parole for the attempted murder and a consecutive term of 25 years to life for the section 12022.53, subdivision (d) allegation.

The trial court indicated that it would not be "changing anything on the abstract [of judgment]." Instead, it would "correct it when [the appellate court] tell[s] me how to do it."

On appeal, neither party initially raised any issues with respect to sentencing. We requested supplemental briefing, asking whether the trial court erred at the initial sentencing hearing and whether this court should remand for resentencing. Both parties agree that the trial court erred. Defendant requests we remand for resentencing, while the Attorney General requests we correct the trial court's errors.

As the trial court recognized, the sentence imposed was unauthorized in several respects.

As to count 1, the trial court should have imposed a sentence of life with the possibility of parole pursuant to section 664, subdivision (a).[5] Under the Three Strikes law, the 7-year minimum parole eligibility date (§ 3046, subd. (a)) should have been doubled to 14 years, although the trial court could have dismissed the strike allegation. (See *People v. Jefferson* (1999) 21 Cal.4th 86, 96.) The trial court should have imposed a separate and consecutive term of 25 years to life for the section 12022.53, subdivision (d) allegation, and a consecutive five-year term for the 667, subdivision (a) allegation.

---

[5] Section 664, subdivision (a) provides in pertinent part: "[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole."

20

As to count 2, the upper term was nine years, not ten years. (See § 245, subd. (b).) The trial court could have dismissed defendant's prior strike as to that count (see *People v. Garcia* (1999) 20 Cal.4th 490, 492-493 (*Garcia*)); if not, the court was required to double that term to 18 years and then add the enhancements, which were properly calculated at 10 years (§ 12022.5, subdivision (a)), three years (§ 12022.7, subd. (a)), and five years (§ 667, subd. (a)).

It is not clear from the record whether the trial court would have exercised its discretion to dismiss the strike allegation as to one or both counts. (See *Garcia, supra,* 20 Cal.4th at pp. 492-493 [trial court may "dismiss a prior conviction allegation with respect to one count but not another"].) Therefore, we will reverse the judgment and remand for resentencing.

## IV.   DISPOSITION

The judgment is reversed and the matter is remanded for resentencing.


_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____
MÁRQUEZ, J.


_____
GROVER, J.