Filed 11/24/14  P. v. Wilkerson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES NATHANIEL WILKERSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B250644<br>(Super. Ct. No. 2012002419)<br>(Ventura County) |

James Nathaniel Wilkerson appeals a judgment following conviction of murder, with findings that he personally inflicted great bodily injury upon his victim, committed the murder during commission of a robbery, and served a prior prison term. (Pen. Code, §§ 187, subd. (a), 189, 12022.7, 190.2, subd. (a)(17)(A) [special circumstance], 667.5, subd. (b).)[1]  We modify the judgment to reflect an award of 638 days of presentence custody credit, but otherwise affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On November 7, 2011, a helicopter pilot flying over Point Mugu saw a body floating in the ocean and notified law enforcement.  Ventura County sheriff's deputies responded by helicopter with a rescue diver.  Deputy Shane Matthews dived into the ocean and placed a female body, later identified as Sarah Overholser, in a rescue

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

basket. Following retrieval of Overholser's body, the deputies covered her hands with plastic bags to preserve any DNA evidence deposited under her fingernails.

Ventura County Medical Examiner Ronald O'Halloran performed an autopsy on Overholser's body and concluded that she died from strangulation. Her body contained extensive external injuries suggesting that it had been dragged over rocks or other hard surfaces. The parties stipulated at trial that laboratory testing revealed no evidence of alcohol or drugs in Overholser's body.

Overholser and John Cox were engaged to be married. They lived together in Cox's white van parked near the Oxnard Rescue Mission. The van contained the couple's belongings and was in "perfect condition."

In 2011, Cox was on probation and did not possess a valid driver's license. For that reason, Overholser drove his van. Cox did not permit another person to drive the van unless he or Overholser were passengers. In October 2011, Cox violated a term of his probation and, as a result, was incarcerated. During that time, Overholser lived alone in the van.

Earlier that year, Cox met Wilkerson and his girlfriend, Kristina Canell. Cox and Wilkerson became "best friends"; Cox "trusted [Wilkerson] with anything." Wilkerson and Canell lived in a van parked near Cox's van and the Rescue Mission. Wilkerson's van was spray-painted black, contained skull and demon decorations, and, according to Cox, was "a piece of junk."

In late October 2011, Wilkerson and Canell made plans for a road trip to Tennessee to visit Wilkerson's family. They planned to drive Wilkerson's van but it developed mechanical problems and became inoperable. Wilkerson admitted to Canell that he "wanted [Cox's] van" and "wasn't past doing anything to get [it]." Wilkerson also did not like Overholser and referred to her as "a bitch."

In the evening of November 6, 2011, Wilkerson and Canell walked to Cox's van parked nearby. Earlier, Overholser had lost or misplaced her money, and Wilkerson planned to offer to recover it "as a lure to kill her." Overholser invited Wilkerson and Canell inside after Wilkerson stated that recovery of the money would involve "a drive."

When Wilkerson stepped inside the van, he pretended to hug Overholser but instead, grabbed her neck and pushed her onto a mattress. Wilkerson ordered Canell to get inside the van quickly; she entered and closed the door. Wilkerson directed Canell to sit on Overholser's flailing legs. During the struggle with Wilkerson, Overholser scratched Canell's face. Wilkerson maintained his hold around Overholser's neck and stated, "This is for John." After "a long time," Overholser stopped struggling and became limp.

Wilkerson instructed Canell to check for Overholser's pulse. Canell found a faint pulse. Meanwhile, Wilkerson maintained his hold around Overholser's neck and stated, "Why won't you just die, bitch." Wilkerson then checked Overholser's pulse, released his chokehold, and wiped her saliva from his leather jacket. Afterward, Wilkerson stated to Canell, "Good job, Babe."

Wilkerson and Canell drove the van containing Overholser's body to a gasoline station and then to Mugu Rock. A video camera at the gasoline station recorded their purchase of gasoline. Wilkerson intended to dispose of Overholser's body in the ocean. The tide conditions at Mugu Rock were unfavorable to this task, however, and Wilkerson drove along Pacific Coast Highway seeking another area. Cameras installed by the United States Department of Homeland Security recorded Wilkerson standing near steps leading to a beach along the highway. When Wilkerson noticed the cameras, he left.

Wilkerson eventually located an area to dispose of Overholser's body. He removed her clothing, wrapped her body in a blanket, and pushed it over an embankment. He then dragged Overholser's body onto some rocks and covered it with additional rocks.

Afterward, Wilkerson and Canell disposed of Overholser's belongings, including her mattress, in trash containers in Port Hueneme and Oxnard. They returned to the Rescue Mission after midnight. The following day, Wilkerson used the white van to push his van to the salvage yard. Wilkerson and Canell also moved their possessions into the white van. Earlier, they had purchased cans of black spray paint "to disguise the

3

white van." Several days later, police officers saw them driving Cox's van; Wilkerson and Canell were detained and later arrested for vehicle theft and murder.

*Recorded Jail Conversations*

Following Wilkerson's arrest and confinement in jail, he and Canell held several telephone conversations during which they discussed the investigation of Overholser's death. During one conversation, Canell advised Wilkerson that she had informed her mother of "the truth" regarding Overholser's death ("it was you and me"). Canell also stated, "Baby, we did it." In response, Wilkerson advised Canell to "say nothing" to police investigators. Wilkerson also stated that he would explain the presence of Overholser's DNA on his jacket by stating that he frequently hugged her.

In another conversation, Wilkerson stated, "[I]t may take awhile. It may be a fuckin' long drawed-out battle in court or whatever. But it's going to be okay. I know this. It's not my first, okay."[2]

The jail conversations were recorded and the prosecutor played the recordings at trial.

*Police Interviews*

After his arrest, sheriff's deputies interviewed Wilkerson. Following advice of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 444, Wilkerson stated that during Cox's incarceration, Overholser gave him a key to Cox's van, permitted him to use it, and then disappeared. According to Wilkerson, Overholser had removed her personal belongings from the van and he moved his belongings inside.

Later, Wilkerson sent a note to sheriff's deputies requesting to speak with them. During this interview, he stated that his friend, Jesse Medina, killed Overholser. Wilkerson explained that Medina forced him and Canell at gunpoint to dispose of Overholser's body near Point Mugu.

The police interviews were recorded and the prosecutor played the recordings at trial.

---

[2] These particular statements are discussed in I., *post.*

4

*Forensic Evidence*

A forensic scientist analyzed the DNA contained on Wilkerson's leather jacket and determined that Overholser was a possible major contributor with a statistical frequency of one in 730 quadrillion. The scientist also analyzed the DNA contained under Overholser's fingernails and determined that Canell was a possible major contributor with a statistical frequency of one in 500 million (one fingernail) and one in six quintillion (another fingernail).

*Conviction and Sentencing*

Canell pleaded guilty to voluntary manslaughter and auto theft in exchange for an 11-year prison sentence and her truthful testimony at trial against Wilkerson.

The jury convicted Wilkerson of first degree murder and found that he personally inflicted great bodily injury upon Overholser, and committed the murder during the commission of a robbery. (§§ 187, subd. (a), 189, 12022.7, 190.2, subd. (a)(17)(A) [special circumstance].) In a separate proceeding, Wilkerson admitted serving a prior prison term within the meaning of section 667.5, subdivision (b). The trial court sentenced Wilkerson to life without parole, plus one year for service of a prior prison term. The court imposed a $2,500 restitution fine and a $40 court security assessment, and awarded Wilkerson 637 days of presentence custody credit. (§§ 1202.4, subd. (b), 1465.8, subd. (a).)

Wilkerson appeals and contends that: 1) the trial court erred by admitting evidence of post-arrest statements that he made to Canell; 2) the trial court erred by instructing with CALCRIM No. 224 ("Circumstantial Evidence: Sufficiency of Evidence"); and 3) the sentence should be modified to reflect 638 days of presentence custody credit and the abstract of judgment should be corrected regarding a $2,500 restitution fine.

*DISCUSSION*

*I.*

Wilkerson argues that the trial court erred by admitting evidence of his post-arrest statements to Canell suggesting that he has committed murder on other

occasions. He asserts that the statements are inadmissible criminal propensity evidence that deny him due process of law. (Evid. Code, § 1101, subd. (a); *People v. Ewoldt* (1994) 7 Cal.4th 380. 404 [evidence of prior crimes is inherently prejudicial], superseded by statute on other grounds as stated by *People v. Britt* (2002) 104 Cal.App.4th 500, 505.) Wilkerson contends that the error is prejudicial pursuant to any standard of review.

Wilkerson made this statement to Canell during a jailhouse telephone conversation in response to her complaint of "stressing": "I know, babe. I know. It ain't easy the first time." Approximately one week later, Wilkerson and Canell again discussed her emotional state and Wilkerson stated: "Baby, like I said it may take a while. It may be a fuckin' long drawed-out battle in court or whatever. But it's going to be okay. I know this. It's not my first, okay? . . . I've been down this road before."

Evidence Code section 352 requires the trial court to weigh the probative value of evidence against the dangers of prejudice, confusion, and undue consumption of time. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1154.) The court may exclude the evidence if these dangers "substantially outweigh" the evidence's probative value. (*Ibid.*) We review the court's ruling for an abuse of discretion. (*People v. Homick* (2012) 55 Cal.4th 816, 865 [trial court's discretionary ruling will be affirmed unless court acted in an arbitrary, capricious, or patently absurd manner].)

The trial court properly exercised its discretion in admitting the statements because they concerned Wilkerson's consciousness of guilt. As the trial judge concluded, the statements are "facially ambiguous" and could refer to "riding out an investigation for committing a crime." A trier of fact could reasonably conclude that, by the statements, Wilkerson is exhorting Canell to rely upon his explanation to sheriff's deputies that Overholser gave him the keys to Cox's van and then disappeared. For this reason, the statements are relevant, not unduly prejudicial, and the trial court acted reasonably in admitting them into evidence. In any event, the statements were brief and their interpretation was a matter for the jury. (*People v. Kraft* (2000) 23 Cal.4th 978, 1035 [jury could determine weight of evidence that defendant may also have killed others].)

6

*II.*

Wilkerson contends that the trial court erred by instructing with CALCRIM No. 224 because the term "innocence" was misleading and lightened the prosecution's burden of proof in violation of federal and California constitutional commands of due process of law. He asserts that the decisions in *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1187, and *People v. Anderson* (2007) 152 Cal.App.4th 919, 932, concluding otherwise, have been wrongly decided. Wilkerson argues that the error is not harmless beyond a reasonable doubt. (*Rose v. Clark* (1986) 478 U.S. 570, 580-582 [prosecution must prove beyond a reasonable doubt that the error did not contribute to the verdict], overruled on other grounds by *Brecht v. Abrahamson* (1993) 507 U.S. 619, 637.)

CALCRIM No. 224 provides: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions *points to innocence and another to guilt, you must accept the one that points to innocence. . . .*" (Italics added.)

We agree with the decisions in *People v. Anderson, supra,* 152 Cal.App.4th 919, and *People v. Ibarra*, *supra*, 156 Cal.App.4th 1174. CALCRIM No. 224 correctly states the law and there is no reasonable probability that the jury misunderstood the instruction. (*People v. Tate* (2010) 49 Cal.4th 635, 696 [standard of review of asserted ambiguous instruction].) The instruction uses the word "innocence" to mean evidence less than that required to establish guilt, not to mean that the defendant must establish innocence or that the prosecution has any burden other than proof beyond a reasonable doubt. CALCRIM No. 224 also reminds the jury that it cannot rely on circumstantial evidence to conclude defendant is guilty unless it is convinced "that the People have proved each fact essential to that conclusion beyond a reasonable doubt." The jury was

7

also properly instructed regarding the burden of proof. (*People v. Crew* (2003) 31 Cal.4th 822, 848.) There is no error.

*III.*

Wilkerson points out that the abstract of judgment states that the trial court ordered $2,500 in victim restitution pursuant to section 1202.4, subdivision (f), but that the oral pronouncement of judgment described the $2,500 as a restitution *fine*. (*Id.*, subd. (b).) The Attorney General properly concedes because the abstract of judgment "cannot prevail over the court's oral pronouncement of judgment to the extent the two conflict." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070.)

Wilkerson also asserts that he is entitled to an additional day of presentence custody credit, for a total award of 638 days. The Attorney General concedes; a defendant is entitled to credit for each day in custody, including the day of his arrest and the day of his sentence. (*People v. Garcia* (2014) 223 Cal.App.4th 1173, 1180.)

We modify the judgment to award 638 days of presentence custody credit, but otherwise affirm. The trial court shall prepare an amended abstract of judgment reflecting 1) a restitution fine of $2,500 pursuant to section 1202.4, subdivision (b) instead of victim restitution, and 2) an award of 638 days of custody credit. The court shall forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

8

James P. Cloninger, Judge

Superior Court County of Ventura

_____

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.