Filed 8/25/15  P. v. Bullock CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DARIS MEADE BULLOCK,<br><br>Defendant and Appellant. | C077211<br><br>(Super. Ct. No. 62122237) |

A jury found defendant Daris Meade Bullock guilty of being a felon in possession of a firearm and being a felon in possession of ammunition and found true that he was armed with a firearm when committing these two offenses.  The jury acquitted him of making a criminal threat.  The trial court sentenced him to five years in prison.

On appeal, defendant raises contentions relating to the evidence, the instructions, trial counsel's performance, and sentencing.

1

We agree with one, namely, the trial court should have stayed the one-year sentence for being armed with a firearm attached to his conviction for being a felon in possession of a firearm. We modify the sentence and affirm as modified.

FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2013, Michelle Morales, her husband, and her other family and friends were camping at Rollins Lake. She met defendant, who was playing a guitar near the river, and she and her friends talked with him and his wife. Morales and her friends ended up going to defendant's house and having some drinks with him.

Morales returned to her campsite, and defendant joined her, her husband, and her friends, and all of them were singing, drinking, talking, and having a good time. Morales ended up drinking too much, getting sick, and going to bed.

Morales awoke to the sound of arguing, and she sent her husband out to see what was going on. Morales decided to get out of her tent as well. She testified she could not remember what happened next because she was too intoxicated. But, upon questioning, she testified there was an altercation involving defendant, and she saw a firearm "[i]n [defendant's] back pocket." The part she initially saw was the handle of the gun and upon seeing it, she "[g]rabbed it and handed it off," "[b]ecause [she] didn't want nobody to get hurt." She called police. Defendant "ended up taking off walking" and Morales was relieved.

However, defendant came back. Morales was "pretty sure that [defendant] was angry that we called the police on him. I'm pretty sure he yelled, 'Why did you call the police.' " Morales called police again.

This time, Placer County Sheriff deputies Dustin Johnston and Sasha Glenwinkel came to the campsite. Morales talked to Deputy Glenwinkel, but Morales testified she could not remember what they talked about. According to Deputy Glenwinkel, Morales was sober and lucid and answered the deputy's questions. Morales said that defendant "threatened to come back and get 'em all" when he learned Morales had called police the

2

first time. Morales said she was scared for her safety and that of her three young children at the campsite because defendant had a firearm. Morales then led the deputy to a spot behind a tree that was about five feet past the last tent, where Morales pointed out a .38-caliber revolver. The revolver was about 40 feet away from where the deputies found defendant.

When the deputies found defendant, he was yelling about something, smelled strongly of alcohol, and could barely walk. Deputy Johnston found a small pouch containing 11 rounds of .38-caliber ammunition in defendant's left front pants' pocket. Deputy Glenwinkel put defendant in the patrol car. Defendant yelled out the window to the campers, "they didn't know who they were messing with and that he'd be back to take care of them later and that they'll be sorry."

The parties stipulated that defendant had a prior felony conviction.

DISCUSSION

I

*The Trial Court Properly Admitted And Instructed*

*On Evidence Of Morales's Prior Inconsistent Statement*

Defendant contends the trial court erred in admitting Morales's prior inconsistent statement and then erred in instructing the jury about the statement. Specifically, Deputy Glenwinkel testified that Morales told her, "[defendant] became irate when he found out Morales had called the cops and threatened to come back and get 'em all."

Defendant argues that his statement he would "come back and get 'em all" (a) was hearsay and not admissible as a prior inconsistent statement; (b) was testimonial and admitted in violation of his due process right to confront the witnesses against him, citing *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177]; and (c) should not have been admitted for the truth of the matter stated and therefore the court erred in instructing the jury.

3

As we explain: (a) this double hearsay statement was admissible as an admission of a party and a prior inconsistent statement; (b) defendant failed to preserve his confrontation clause argument because he did not object on this ground in the trial court, but his trial counsel was not ineffective for failing to object; and (c) the trial court correctly instructed the jury.

A

*The Double Hearsay Statement Morales Told The Deputy That*
*Defendant Threatened To "Come Back And Get 'Em All" Was Admissible*
*As An Admission Of A Party And A Prior Inconsistent Statement*

Defendant contends that his statement he would "come back and get 'em all" was hearsay and not admissible as a prior inconsistent statement. As we explain, there were two levels of hearsay in this statement and both fell within exceptions to the hearsay rule. (See *People v. Reed* (1996) 13 Cal.4th 217, 224-225 ["As with all multiple hearsay, the question is whether each hearsay statement fell within an exception to the hearsay rule]".)

The first level of hearsay was defendant's statement that he threatened to "come back and get 'em all." This hearsay statement was admissible as an admission by a party. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party. . . ."].) "Evidence Code section 1220 covers all *statements* of a party, whether or not they might otherwise be characterized as admissions." (*People v. Horning* (2004) 34 Cal.4th 871, 898, fn. 5.) "Simply stated, and as a general rule, if a party to a proceeding has made an out-of-court statement that is relevant and not excludable under Evidence Code section 352, the statement is admissible against that party declarant." (*People v. Castille* (2005) 129 Cal.App.4th 863, 875-876.) Here, the People offered this statement as such, the court admitted it, and there was no argument (in the trial court or on appeal) that its admission violated Evidence Code section 352. As such, the court was within its discretion to admit it.

4

The second level of hearsay was Morales's statement to Deputy Glenwinkel that Morales told the deputy, "[defendant] . . . threatened to come back and get 'em all." This statement was admissible as a prior inconsistent statement under Evidence Code section 1235 because it was inconsistent with Morales's trial testimony. A prior statement can be deemed inconsistent when the witness is found to be evasive at trial, even though claiming a lack of memory. (*People v. Ervin* (2000) 22 Cal.4th 48, 85-86.) "When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219.) Morales's testimony demonstrates at times she was deliberately evasive, and at other times she had a selective memory. For example, when the prosecutor asked her, "Did the defendant make any statements to you about the fact that you called the police," Morales responded, "I don't recall." When the prosecutor asked her why she did not recall, Morales responded, "I don't remember having a conversation with him." However, after the prosecutor "ha[d] [her] read something"[1] and asked if that "refreshed [her] recollection regarding whether or not the defendant made any statements to [her] about contacting the police," Morales replied, "I'm pretty sure that he was angry that we called the police on him. I'm pretty sure he yelled, 'Why did you call the police.' " This testimony was inconsistent with Morales's statement to the deputy that defendant "threatened to come back and get 'em all," so the court was within its discretion to admit it, where defendant had objected to its admission on the grounds that it was not a prior inconsistent statement.

---

**1**      Presumably this was the statement Deputy Glenwinkel wrote down about what Morales said defendant had said to Morales.

B

*Defendant's Confrontation Clause Claim Was Forfeited By His Failure*

*To Make A Specific And Timely Objection; Trial Counsel Was Not Ineffective*

Defendant next contends that Morales's statement to the deputy that defendant said he would "come back and get 'em all" was testimonial and admitted in violation of his due process right to confront the witnesses against him. As we explain, defendant failed to preserve this argument, but his trial counsel was not ineffective.

"Under California law, error in admitting evidence may not be the basis for reversing a judgment or setting aside a verdict unless 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and *so stated as to make clear the specific ground of the objection or motion . . . .*' (Evid. Code, § 353, subd. (a), italics added [by *Zamudio*].) 'In accordance with this statute, [the California Supreme Court has] consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable. [Citations.]' (*People v. Seijas* (2005) 36 Cal.4th 291, 302 . . . .) Although no 'particular form of objection' is required, the objection must 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 354.)

Thus, to preserve a claim of federal constitutional error under the confrontation clause, defendant was required to make a timely and specific objection, rather than simply object (as he did) about the statement's admissibility as a prior inconsistent statement.

Nevertheless, trial counsel was not ineffective for failing to object on this ground. In *Crawford*, the United States Supreme Court held that the confrontation clause prohibits "admission of testimonial statements of a witness who did not appear at trial

6

unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford v. Washington*, *supra*, 541 U.S. at pp. 53-54 [158 L.Ed.2d at p. 194].) Regarding unavailability, this court has rejected the notion that for *Crawford* purposes, "a witness who appears at trial but feigns a lack of memory should nonetheless be considered unavailable." (*People v. Gunder* (2007) 151 Cal.App.4th 412, 419.) "The circumstance of feigned memory loss is not parallel to an entire refusal to testify. The witness feigning memory loss is in fact subject to cross-examination, providing a jury with the opportunity to see the demeanor and assess the credibility of the witness, which in turn gives it a basis for judging the prior hearsay statement's credibility." (*Id.* at p. 420.) Thus, "a reasonably competent lawyer would not have bothered to assert an objection based on a violation of defendant's right to confrontation. As a result, we reject the defendant's argument." (*Gunder*, at p. 420.)

The same is true here. Morales was present at trial and available for cross-examination. She did not refuse to testify, but rather feigned memory loss as to certain aspects of what happened with defendant, so the jury was able to assess her credibility. Thus, there was no reason for trial counsel to assert a confrontation clause violation.

C

*The Trial Court Properly Instructed The Jury Pursuant to*

*CALCRIM No. 318 Regarding Prior Statements As Evidence*

Over trial counsel's objection that there was no foundation to give CALCRIM No. 318 because there was no contrived failure to remember, the court instructed the jury as follows:

"You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways. First, to evaluate whether the witness's testimony in court is believable; and second, as evidence that the information in those earlier statements is true."

7

On appeal, defendant renews his objection, contending the court erred in giving the instruction "because it presumed the existence of a non-existent foundational fact (i.e. deliberate evasiveness) and thus invited the jury to consider incompetent evidence" for the truth of the matter stated.

In *People v. Hudson* (2009) 175 Cal.App.4th 1025, we discussed the application of CALCRIM No. 318. "CALCRIM No. 318 informs the jury that it may reject in-court testimony if it determines inconsistent out-of-court statements to be true. By stating that the jury 'may' use the out-of-court statements, the instruction does not require the jury to credit the earlier statements even while allowing it to do so. [Citation.] Thus, we reject defendant's argument that CALCRIM No. 318 lessens the prosecution's standard of proof by compelling the jury to accept the out-of-court statements as true." (*Hudson*, at p. 1028.)

While the argument here is not that the instruction lessened the burden of proof, but rather that there was no foundational premise for the instruction, a claim we have already rejected in part IA of the Discussion, *Hudson* makes the very relevant point that the instruction does not direct the jury to believe the out-of-court statement, but that it can if it so chooses. This is a correct statement of law, again, as we explained in part IA of the Discussion, because the jury is allowed to consider the statement for the truth of the matter, if it so chooses.

In addition, here the jurors received other instructions that applied to their understanding and application of CALCRIM No. 318. The court instructed with CALCRIM No. 226, which told jurors that "[y]ou alone must judge the credibility or believability of the witnesses," in evaluating a witness's testimony "you may consider" whether "the witness ma[d]e a statement in the past that is consistent or inconsistent with his or her testimony," "[d]o not automatically reject testimony just because of inconsistencies or conflicts," "[p]eople sometimes honestly forget things or make mistakes about what they remember," and that "[i]f you do not believe a witness's

8

testimony that he or she no longer remembers something, that testimony is inconsistent with the earlier statement on that subject."

Thus, the instructions as a whole told jurors they were the ones to decide witness credibility taking into account, among other things, whether there were inconsistencies in a witness's testimony or failures to remember evidence. It did not direct them to credit the earlier statement by Morales to Deputy Glenwinkel about what defendant said. We presume the jury was able to follow all of the court's instructions. (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1190.)

## II

### *There Was Sufficient Evidence That Defendant Was Guilty*
### *Of Being A Felon In Possession Of A Firearm*

Defendant contends there was insufficient evidence he was a felon in possession of a gun because Morales had no present recollection of the events in question and the hearsay statements were "incompetent hearsay." Not true. When the prosecutor first asked Morales where the gun was when she first saw it, she responded, "I was told it was in [defendant's] back pocket." The court sustained an objection to the question and answer and told the jury to "disregard the response." The prosecutor then told Morales, "I don't want you to talk about what someone told you, just what you remember" and then asked her, "Do you remember where you first saw the firearm?" Morales answered, "In [defendant's] back pocket." The part she initially saw was the handle of the gun and upon seeing it, she "[g]rabbed it and handed it off," "[b]ecause [she] didn't want nobody to get hurt." This evidence was sufficient to show defendant possessed the firearm.

## III

### *The Punishment For The Arming Enhancement Attached*
### *To The Felon In Possession Count Must Be Stayed*

The trial court sentenced defendant to four years in prison for being a felon in possession of a firearm plus one year for the arming enhancement. On appeal, defendant

9

contends and the People agree that the one-year sentence for the enhancement for being armed with the weapon he possessed should have been stayed pursuant to Penal Code section 654.  We agree.

The People's theory of the case at trial was that defendant physically possessed the gun in his pocket and that "one in the same act" also constituted being armed with a firearm within the meaning of the enhancement.  Consistent with this theory, the People presented no evidence defendant possessed or used the firearm at any time other than when he had it in his pocket.  Thus, there was no " 'possession distinctly antecedent and separate from the primary offense' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22) warranting separate punishment for the arming enhancement.  Thus, the trial court should have stayed the arming enhancement attached to the felon in possession of a gun count.

DISPOSITION

The punishment for the arming enhancement attached to the felon in possession of a firearm count is stayed pursuant to Penal Code section 654.  As modified, the judgment is affirmed.  The trial court is directed to modify the abstract of judgment accordingly and forward a copy of the modified abstract to the Department of Corrections and Rehabilitation.


                                                      ROBIE            , Acting P. J.


We concur:


      BUTZ            , J.


      HOCH            , J.

10